**In re the CUSTODY OF Mackenzi C. NUGENT.**

**Forest A. BELL, Appellant and Cross–Appellee,**

**v.**

**Devon Courtney NUGENT, Appellee and Cross–Appellant.**

No. 96CA0309.

Colorado Court of Appeals, Div. I.

Sept. 18, 1997.

Rehearing Denied Oct. 30, 1997.

Certiorari Denied May 18, 1998.

Winzenburg, Leff & Mitchell, Lawrence B. Leff, Carey Spence Gunn, Denver, for Appellant and Cross–Appellee.

John E. Fitzgibbons, Denver, for Appellee and Cross–Appellant.

Opinion by Judge METZGER.

Forest A. Bell (mother) appeals and Devon Courtney Nugent (father) cross-appeals the trial court's denial of father's motion to dismiss for lack of jurisdiction and dismissal of the case without prejudice. Father also cross-appeals the trial court's orders that converted the action to a custody proceeding and approved a "purported, unsigned stipulation" concerning custody, child support, and property division. We affirm in part, reverse in part, vacate in part, and remand the cause for further proceedings.

This case was originally commenced by mother as a dissolution of marriage action. In addition to alleging that the parties had entered into a common law marriage, mother asserted that she had been a resident and domiciliary of Colorado for 90 days preceding the filing and that father was a member of the Armed Forces, who was on active submarine duty stationed in Connecticut. Mother attempted on several occasions to have father personally served on military bases, but he refused to accept service. Ultimately, father was personally served in Colorado in April 1994, when he came to visit the minor child.

Permanent orders were initially scheduled for hearing in September 1994. In August 1994, father wrote a letter to the district court and sought a continuance of that hearing until July 13, 1995, stating that he would be at sea for a major part of the interim period. He also asserted the rights available to him under the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. § 520 (1994) (Act), and stated that the letter was not intended as an appearance, as submission to the jurisdiction of the court, or as a waiver of his rights under the Act. Hearing on permanent orders was thereafter rescheduled to March 15, 1995, and father was advised of the new date by mail sent to the Virginia address set forth in his letter.

In October 1994, mother requested that the court appoint an attorney for father in accordance with the Act. That motion was granted on January 25, 1995, but the written order is blank as to the name of the appointed attorney. The register of actions shows that mother simultaneously advised the court that father had obtained his own attorney and that it was not necessary for one to be appointed for him under the Act.

On March 5, 1995, an attorney entered a general appearance on behalf of father and a hearing on permanent orders was rescheduled for July 21, 1995. That hearing apparently was vacated, and in August 1995, father's attorney filed a response, not signed by father, to mother's petition for dissolution. That response denied that the parties had been married at common law and requested that the court determine that the parties were not married and that father was not the father of the minor child. It also requested that the court award father reasonable attorney fees and costs and enter such other orders as the court deemed appropriate. It made no specific mention of jurisdiction.

Approximately two weeks later, father's counsel moved to withdraw. While that motion was pending, mother filed several documents: a "Motion to Enforce Stipulation for Custody, Child Support and Property Settlement and Amendment of Pleadings," an accompanying order, a "Stipulation for Custody, Child Support and Property Settlement" (signed only by wife's attorney), and a "Motion to Amend Petition for Dissolution of Marriage to a Petition for Custody, Child Support and Property Settlement." The record contains no certificate of mailing for the Stipulation; the certificate of mailing for the Amended Petition is blank; the certificate of mailing attached to the Motion to Enforce,

while signed, refers only to the Motion to Amend.

The trial court granted the motion for withdrawal of father's counsel on September 22, 1995. And, on October 6, 1995, noting that no response had been filed, it granted mother's motion to enforce the stipulation and her motion to convert the action to a custody proceeding.

The effect of these orders was to award custody of the minor child to mother, to require father to pay child support of $857.63 based upon application of the statutory guidelines, and to award mother a house, which was titled in father's name. Father was awarded the tax exemption for the child and was required to maintain life insurance to secure his child support obligation.

On October 18, 1995, father, through new counsel, filed a motion to dismiss for lack of subject matter and personal jurisdiction. On December 1, 1995, after mother responded and father filed a reply, the court entered the following order:

> This matter comes before the Court on [father's] Motion to Dismiss for Lack of Jurisdiction. The Motion is denied. This matter was set on July 21, 1995 for permanent orders. The date was vacated by agreement of the parties. The file has been inactive and no further proceedings have been set by the parties. This matter is dismissed without prejudice at this time.

Mother filed a timely motion to reconsider; father filed a response; the court summarily denied the motion.

## I.

Initially, we note that another division of this court discharged an order to show cause why this appeal should not be dismissed for lack of a final order based on mother's response that the matter could not be saved by refiling. Mother noted that it took over a year to effect service on father and, because of his transfer of duty station to Europe, "any chance of . . . serving . . . him all over again is close to zero." In light of this unchallenged assertion, we view this situation to be the type of special circumstance indicating that the action cannot be saved. *See*

*e.g. Buckmiller v. Safeway Stores, Inc.*, 690 P.2d 883 (Colo.App.1984), *rev'd on other grounds*, 727 P.2d 1112 (Colo.1986). Moreover, we note that the trial court's orders, entered before the order of dismissal, purported to resolve completely the rights of the parties with respect to the issues raised. *See Brody v. Bock*, 897 P.2d 769 (Colo.1995). Thus, we will address the merits of the parties' assertions.

## II.

Mother interprets the trial court's December 1995 order as a dismissal for failure to prosecute. Based on that interpretation, she asserts the court abused its discretion by dismissing the case without complying with the procedural requirements for such dismissal. In contrast, father contends that the dismissal was proper because of various procedural irregularities. However, on cross-appeal, he asserts that the trial court should have granted his motion to dismiss for lack of jurisdiction. Because the issues raised are interrelated, they will be discussed together.

## A.

Personal jurisdiction may be waived expressly or by implication. *People in Interest of Clinton*, 762 P.2d 1381 (Colo. 1988). Personal service upon a natural person within the forum state enables that state to exercise personal jurisdiction over the party served and satisfies due process requirements. *Burnham v. Superior Court*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); *O'Brien v. Eubanks*, 701 P.2d 614 (Colo.App.1984). In such a case, the minimum contacts analysis of jurisdiction is inapplicable, *O'Brien v. Eubanks, supra*, because that doctrine substitutes for a defendant's physical presence as the basis for jurisdiction only if the defendant is not served within the forum state. *Burnham v. Superior Court, supra.*

Here, since father was properly served within Colorado, and since his attorney entered a general appearance without contesting jurisdiction, the court had personal jurisdiction of father. Accordingly, the

trial court properly denied father's motion to dismiss for lack of personal jurisdiction.

### B.

Father contends, however, that numerous procedural defects, which he alleges were violative of the Act, had the effect of depriving the trial court of jurisdiction over his person. We disagree.

50 U.S.C.App. § 520 (1994) establishes certain requirements that must be met before a default judgment may be entered against a member of the military. They include filing of a bond to indemnify that member in the event the judgment is set aside in whole or in part, and the appointment of an attorney to represent the member's interests. It also contains a provision to set aside a judgment if the member can establish prejudice and a meritorious or legal defense to all or part of the action. 50 U.S.C.App. § 520(4) (1994).

50 U.S.C.App. § 521 (1994) also provides that, upon application of the member, the action shall be stayed, unless the court determines that the member's ability to prosecute or defend is not materially affected by reason of military service.

The purpose of the Act is to protect members of the military from having default judgments entered against them without their knowledge; the Act does not prevent the entry of such a judgment when there has been notice of the pendency of the action and the member has had adequate time and opportunity to appear and defend. *Roqueplot v. Roqueplot,* 88 Ill.App.3d 59, 43 Ill.Dec. 441, 410 N.E.2d 441 (1980). *See also Fifth Third Bank v. Kuney,* 107 Ohio App.3d 601, 669 N.E.2d 271 (1995).

In order to invoke the protections of § 520, a member must fail to make any appearance whatsoever in the proceedings which culminated in the entry of judgment. *In re Marriage of Miller,* 260 Mont. 15, 858 P.2d 338 (1993). A member seeking to set aside a judgment under § 520 must also show prejudice by reason of military service and that he or she has a meritorious defense. *La Mar v. La Mar,* 19 Ariz.App. 128, 505 P.2d 566 (1973).

Further, a judgment entered in violation of the Act is merely voidable, and not void. *Krumme v. Krumme,* 6 Kan.App.2d 939, 636 P.2d 814 (1981).

Here, father was notified of the action when he was personally served in Colorado. In addition, although he initially contested the jurisdiction of the court under the Act, he thereafter participated in the action through his authorized counsel. His response to the petition for dissolution sought affirmative relief and he requested a continuance of the permanent orders hearing. Furthermore, he did not assert or establish in his motion to dismiss that he was prejudiced or that he had a meritorious defense.

Under these circumstances, there was no default within the meaning of the Act. *In re Marriage of Miller, supra.* Thus, we conclude that denial of father's motion to dismiss on the basis of a lack of *in personam* jurisdiction did not violate the terms of the Act. *See Roqueplot v. Roqueplot, supra.*

### C.

Father also contends that, because no valid common law marriage existed, the trial court erred in denying his motion to dismiss. We conclude that a hearing is necessary to resolve the issue.

In Colorado, a common law marriage is established by mutual consent or agreement of the parties to be husband and wife, followed by their mutual and open assumption of the marital relationship. *Crandell v. Resley,* 804 P.2d 272 (Colo.App.1990). The determination of the existence of a common law marriage turns on issues of fact and credibility. *People v. Lucero,* 747 P.2d 660 (Colo.1987).

Since the existence of a marriage is in dispute, the court must resolve that issue after a hearing.

### D.

We agree with mother that the order dismissing the case for failure to prosecute is not supported by the record or by any request by father, nor was it entered in compliance with the notice requirements of

C.R.C.P. 41(b)(2) and C.R.C.P. 121 § 1–10. *See Maxwell v. W.K.A., Inc.,* 728 P.2d 321 (Colo.App.1986). Thus, that order must be reversed.

### III.

■ On cross-appeal, father contends the trial court erred in approving the "stipulation," which was signed only by mother's counsel. He also argues that, because he received no notice of mother's motion to amend the case to a custody action, the order granting that motion should be set aside. We agree.

■ A settlement agreement need not be in writing to be enforceable. Instead, a contract may be evidenced by showing that counsel had the authority to extend an offer and that the other party accepted it. *South Carolina Insurance Co. v. Fisher,* 698 P.2d 1369 (Colo.App.1984).

■ The protection afforded a member of the military from any waiver of rights by counsel applies only if counsel acted pursuant to the authority of the court, rather than pursuant to the authority of the member. It is a question of fact whether a member has authorized an attorney to act. *Sanders v. Sanders,* 63 Wash.2d 709, 388 P.2d 942 (1964).

The limited record in this case does not establish that, before the court entered its orders approving the "stipulation" and amending the action to a custody proceeding, father had received notice of any of mother's motions or that he had authorized his then attorney to agree to any of the terms of the "stipulation." Therefore, the orders cannot stand.

### IV.

Mother's request for attorney fees and costs is a matter that may be renewed upon motion to the trial court. *See In re Marriage of Meisner,* 715 P.2d 1273 (Colo.App. 1985). Father's request for attorney fees has no basis under § 13–17–101, et seq., C.R.S.1997.

The portion of the order denying father's motion to dismiss on the basis of personal jurisdiction is affirmed. The orders dismissing the case for failure to prosecute, converting the action to one concerning child custody, and approving the "stipulation" are reversed. The denial of father's motion to dismiss is vacated, and the cause is remanded for further proceedings consistent with the views expressed herein.

CRISWELL and MARQUEZ, JJ., concur.