In re the MARRIAGE OF Hilda E. MEISNER, Appellee,

and

Henry H. Meisner, Appellant.

No. 84CA0286.

Colorado Court of Appeals, Div. II.

Sept. 26, 1985.

Rehearing Denied Nov. 14, 1985.

Certiorari Denied March 17, 1986.

Eric C. Jorgenson, Fort Morgan, for appellee.

Waldo & Waldo, Ralph E. Waldo, Jr., Robert M. Waldo, Greeley, for appellant.

SMITH, Judge.

In this dissolution of marriage action, husband appeals from the permanent orders relative to division of property, maintenance and attorney fees. We affirm.

At the time of dissolution on December 14, 1983, the parties had been married seven years. The trial court found that, on the date of marriage, the husband's separate property consisted of farm property, a house, various household goods, and a business lot which was sold in 1981. The wife's separate property on the date of marriage was found to consist of a mineral interest, mutual funds, and certain household goods.

The trial court further found that the only marital property acquired by the parties were shares in a mutual fund. The husband and wife stipulated that, in September 1983, after this action had been commenced, husband withdrew $45,000 from the fund to satisfy personal indebtedness and that the value of the remaining shares was $57,469.70. The trial court found that the remaining shares were held in husband's name "as Trustee for" the wife and that, even though during the separation husband changed the manner in which the shares were titled, the husband's original intent was that it was a joint in-

vestment with the wife and that the shares were to be hers in the event of his death. The court thus concluded that the total value of the marital property was $102,-469.70 and awarded wife one-third or the sum of $34,156.57.

After taking into account the marital property awarded to wife, as well as the factors set forth in § 14–10–114(2), C.R.S., the trial court also awarded permanent maintenance to her of $300 per month. This award was based in part on the fact that wife had only minimal assets and no apparent means of support.

Husband filed a motion for new trial and to alter or amend the judgment, supported by affidavits, alleging that an error was made at the time of trial as to the value of the shares of the mutual fund. Husband alleged that the stipulated value of the shares was based on his belief that there were 7,265.453 shares whereas there were only 2,896.4 shares having a value of $23,-203.54.

Citing *Kennedy v. Bailey*, 169 Colo. 43, 453 P.2d 808 (1969) and C.R.C.P. 59(a)(4), the trial court denied husband's motion finding that the value of the shares was readily ascertainable on December 14, 1983, and that the husband by "exercising reasonable diligence, could have had the allegedly correct information available on said date."

## I.

### Disposition of Mutual Fund

Husband's first contention on appeal is that the trial court erred in finding that the shares in the mutual fund were marital property and in awarding wife one-third of that property.

He urges that this was error based upon his own testiimony that the shares in question were purchased with life insurance proceeds he received from the death of his first wife, from insurance proceeds from an accident in which he was injured prior to the marriage, and from his own savings account. We disagree.

■ "Marital property" is defined in § 14–10–113, C.R.S. A presumption exists under the statute that property purchased during the marriage is marital property. That presumption here is not necessary, however, inasmuch as the trial court specifically found, from the evidence, that husband's intent in purchasing the shares was to make a joint investment with his wife and that he intended that the shares should pass to her upon his death. Thus, the fact that the funds used to purchase the shares may have originally been husband's separate property has no bearing on whether the investment is marital property. The trial court's findings concerning the intent of husband are supported by the evidence and are thus binding on us on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

■ Furthermore, the fact that title to the shares was not designated as being held jointly does not overcome the presumption that they were marital property. *See* § 14–10–113(3), C.R.S. The assets of the trust were held by husband as an equitable trustee and were, therefore, subject to division as marital property under § 14–10–113(1), C.R.S. *See In re Marriage of Kaladic*, 41 Colo.App. 419, 589 P.2d 502 (1978).

Nor do we find any merit to husband's argument that the $45,000 withdrawn by him subsequent to the commencement of this action must be excluded from the computations as to the value of the fund shares.

Section 14–10–107(4)(b)(I)(A), C.R.S. (1984 Cum.Supp.) provides that upon the filing of a petition for dissolution of marriage a temporary injunction shall be in effect:

"Restraining both parties from transferring, encumbering, concealing, or in any way disposing of, without the consent of the other party or an order of the court, any marital property, except in the usual course of business or for the necessities of life and requiring each party to notify the other party of any proposed extraordinary expenditures and to account to the court for all extraordinary expenditures made after the injunction is in effect."

██ Since husband failed to obtain an order of the court or consent of his wife before negotiating $45,000 worth of shares to pay off debts and expenses relative to his separate property, it was incumbent on him to show that this was done either in the usual course of business or was for the necessities of life. The trial court did not find either of these to be the case here. Thus, we find no error in the trial court's refusal to exclude the $45,000 in its determination of the value of the marital property.

The husband next contends that the trial court erred in refusing to amend its order to reflect that the value of the shares in the fund on the date of dissolution was $23,203.54 rather thatn $57,469.70. We disagree.

Here, the evidence of the number of shares and their value could have been easily discovered before trial, and there was no error on the part of the trial court in its denial of husband's motion under C.R.C.P. 59(a)(4).

## II.

### Maintenance Award

The husband argues that the antenuptial agreement executed by the parties precluded the award of maintenance. In pertinent part the agreement provided:

"Henry H. Meisner desires to keep all of his property, now owned or hereafter acquired, free from any claim that Hilda E. Haines might otherwise acquire by reason of the marriage or by reason of her surviving him as his widow, and Hilda E. Haines desires to keep all of her property, now owned or hereafter acquired, free from any claim that Henry H. Meisner might otherwise acquire by reason of the marriage or by reason of his surviving her as her widower.

Each of the parties has agreed to accept the provisions set forth in this agreement in place of all rights in the property and estate of the other, either as wife or husband during the lifetime of either, or as widow, widower, heir at law, next of kin, or distributee upon the death of the other."

"Henry H. Meisner hereby agrees, in the event of the marriage, to provide for Hilda E. Haines a home to live in, together with her necessary food, clothing and support during the lifetime of Henry H. Meisner or as long as Hilda E. Haines shall survive and shall live with Henry H. Meisner as husband and wife."

██ The trial court concluded that neither this provision nor any of the other language contained in the antenuptial agreement precluded the award of maintenance or reflected any waiver of maintenance of wife's part. We agree.

██ Even if we were to conclude that the trial court erred in its conclusion, and that the antenuptial agreement expressed the intention of the parties that maintenance not be awarded, the award must still be affirmed. An antenuptial maintenance agreement is unconscionable and will not be enforced, if, at the time of the marriage dissolution, the spouse seeking maintenance is without a means of reasonable support, either because of a lack of property or a condition of Unemployability. *Newman v. Newman*, 653 P.2d 728 (Colo.1982).

In this regard the trial court found, *inter alia:*

"a. Petitioner lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs.

b. Petitioner is unable to support herself through appropriate employment.

c. Petitioner's assets are as stated on her Affidavit With Respect to Financial Affairs, filed with this Court on December 14, 1983, as corrected by her testimony relating to two small bank accounts. She is unable to meet her needs independently due to her disability.

d. Petitioner's future earning capacity is extremely limited and it does not appear, at age 62, that additional education or training will enable her to find appropriate employment.

e. The parties enjoyed a comfortable standard of living during their marriage as evidenced by some foreign travel, attendance at numerous social functions and their ability to maintain the lifestyle they desired.

f. The parties were married almost exactly seven (7) years, during which time they appeared to equally share in the fruits of their relationship.

g. Petitioner is a 62 year-old woman whose physical condition hinders her from gainful employment and the social activities which she engaged in previously. Her emotional condition appears satisfactory.

h. Respondent has the ability to meet his own needs while meeting the needs of the petitioner.

i. Petitioner has current monthly income of approximately $350 (exclusive of maintenance) and expects to have monthly expenses of approximately $860. Her current net worth is less than $5,000, exclusive of any marital property that may be apportioned to her.

j. Respondent's income varies yearly based upon farm commodity prices, and his net worth, according to the evidence presented, exceeds $375,000."

In addition, the trial court also found that: "Pursuant to 14–10–114(2) C.R.S. 1973, petitioner's reasonable support needs are $300 per month, after taking into account the marital property apportioned to her. . . ." Based on these findings the trial court concluded, as have we, that even if the agreement did contain a preclusion such as husband argues, the same would be unconscionable, and would thus not be enforceable under the doctrine announced in *Newman, supra.*

## III.

### Costs and Attorney Fees

■ The trial court, after considering the financial resources of both parties "and in an attempt to equalize the status of the parties," ordered that husband pay all of wife's attorney fees and costs. Contrary to husband's contention, we perceive no error or abuse of discretion in that order. *See In re Marriage of Mitchell,* 195 Colo. 399, 579 P.2d 613 (1978).

■ Wife has filed a motion requesting costs and attorney fees on appeal. Husband has filed a motion requesting costs on appeal. Costs are to be awarded in accordance with C.A.R. 39(a). We do not find this appeal frivolous, and therefore, deny wife's request for damages and costs under C.A.R. 38. Wife's request for attorney fees on appeal pursuant to § 14–10–119, C.R.S., is a matter for the trial court upon proper application after remand. *In re Marriage of Anderson,* 37 Colo.App. 55, 541 P.2d 1274 (1975).

Judgment affirmed.

VAN CISE and STERNBERG, JJ., concur.