### In re the MARRIAGE OF Rosanne R. JORGENSON, Appellee,

and

### Randy W. Jorgenson, Appellant.

### No. 05CA0212.

Colorado Court of Appeals, Div. III.

Aug. 10, 2006.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

1170

Law Office of Kama McConaughy, Kama McConaughy, Englewood, Colorado, for Appellee.

Davide C. Migliaccio, Colorado Springs, Colorado, for Appellant.

Opinion by Judge TAUBMAN.

In this dissolution of marriage proceeding, Randy W. Jorgenson (husband) appeals from the property division entered as part of the trial court's permanent orders. We reverse and remand for further proceedings.

Husband and Rosanne R. Jorgenson (wife) were married for approximately twenty-seven years. In 2001, wife received a personal injury settlement in the amount of $1.9 million to compensate her for heart damage caused by a prescription drug. Most of the marital assets, including the marital residence, were purchased with the settlement proceeds. The parties also spent $171,000 to start a business known as All Tune and Lube. The remaining funds, in excess of $1 million, were either lost in the stock market or spent by the parties. Of those funds, the court determined that husband had withdrawn, transferred, or concealed $217,099.90 and that he failed to show the funds were used either for necessities or in the ordinary course of business.

In January 2004, husband stopped making payments on the business lease for All Tune and Lube. In June 2004, he sold the business assets, effectively negating the parties' prior stipulation to list the business for sale. The court noted that the parties were being sued by the lessor and found that despite wife's personal guarantee of the lease, she had not been involved in the management or operation of the business. The court also found that husband had funds available to him to make more payments on the lease than he did.

The trial court included the value of the assets dissipated by husband in the marital estate, ordered some assets to be sold, and then divided the marital assets equally. However, because of husband's unilateral action in stopping payment on the lease and related actions, the trial court imposed sole liability upon him to satisfy any judgment or settlement entered against the parties relating to the lease dispute.

### I. Classification of Potential Marital Liability

■ Husband first contends that the property division must be set aside because the trial court erred by not classifying the potential marital liability associated with the lawsuit. We find no error.

■ The initial step a court must make in evaluating a marital estate for distribution is to determine whether an asset is marital, that is, acquired during the marriage and

subject to division, or separate property, which is shielded from distribution. Section 14–10–113, C.R.S.2005; *In re Marriage of Dale,* 87 P.3d 219 (Colo.App.2003). Allocation of marital debts is in the nature of property division. *In re Marriage of Burford,* 26 P.3d 550 (Colo.App.2001). Thus, debts, as well as assets, must be classified as marital or separate.

■ Marital liabilities include all debts that are acquired and incurred by a husband and wife during their marriage. *In re Marriage of Speirs,* 956 P.2d 622 (Colo.App.1997).

Here, the trial court specifically determined that the personal injury settlement proceeds constituted marital property, and it was undisputed that the business was started with a portion of those funds. The court also divided the business bank accounts and the proceeds from the sale of the business equipment as marital assets and rejected as inequitable husband's proposal that wife share fifty percent of the potential liability for the lease default.

Thus, although the trial court did not specifically classify the lease obligation as a marital debt, it is clear from the undisputed facts and the trial court's order that the debt was marital and treated as such in the property division. *See In re Marriage of Dale, supra* (property acquired by either spouse during the marriage is presumed marital, as is the appreciation in the value of separate property and any income produced by separate assets during the marriage).

## II. Valuation of Potential Liability

■ Husband next contends that the trial court erred by not valuing the potential lease liability. We agree and conclude that additional findings regarding this issue are necessary.

■ Once property has been deemed to be marital, the court must value it. *In re Marriage of Zappanti,* 80 P.3d 889 (Colo.App. 2003).

■ That principle applies to marital debt, which must be valued in the same way marital property is valued. Ordinarily, the trial court must compute the total amount of the parties' debts and must determine the date of valuation under the rules that apply to the valuation of marital property. *See* § 14–10–113(5), C.R.S.2005 (property should be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree of dissolution).

■ An obligation to guarantee the debt of another should not be considered at all when the chance of liability is so small as to be speculative. However, if there is a quantifiable likelihood of liability, the obligation should be valued at its face amount times the percentage chance of liability. 2 Brett R. Turner, *Equitable Distribution of Property* § 6.98, at 520 (3d ed.2005) (citing *Blackstone v. Blackstone,* 288 Ill.App.3d 905, 224 Ill.Dec. 90, 681 N.E.2d 72 (1997)).

Here, no party disputes that the lessor has pursued litigation or that lease payments were not made. Wife also testified that the parties were being sued for missed payments of $48,743.27, as well as penalties, interest, attorney fees, and the balance due for the remainder of the lease period, which was approximately $250,000. Under these circumstances, the trial court could not reasonably disregard the potential liability as speculative.

We recognize that a personal guaranty may pose significant valuation problems given the contingent nature of the debt. Therefore, on remand, the court may obtain guidance by looking to the accepted methods of valuation and distribution for other contingent property interests, such as pensions and trusts.

■ The three methods of distribution for pension benefits are net present value, deferred distribution, and reserve jurisdiction. *In re Marriage of Hunt,* 909 P.2d 525 (Colo.1995). Under the net present value method, the trial court should consider a number of factors, including certain risks, and accord a present value to the future benefit, or in this case, the future liability, which will then be allocated between the parties immediately and may involve an offset against other property or debt in the

marital estate. *See In re Marriage of Riley–Cunningham,* 7 P.3d 992 (Colo.App.1999).

 The remaining two methods involve a delay in distribution. Under the deferred distribution approach, the parties' percentage share is determined at the time of permanent orders, but is applied later when the benefit is received. The alternative method of reserve jurisdiction enables the trial court to wait until the benefit has accrued to determine the proper division or allocation. *See In re Marriage of Casias,* 962 P.2d 999 (Colo.App.1998).

Similar considerations apply to the distribution of trusts as marital property. *See In re Marriage of Balanson,* 25 P.3d 28, 44 n. 6 (Colo.2001) (courts addressing the valuation of trust interests have suggested an approach similar to that taken when valuing pensions, including the consideration of a variety of circumstances such as actuarial information and information concerning the probability and extent to which the corpus will be invaded); *see also In re Marriage of Weiss,* 695 P.2d 778 (Colo.App.1984) (court abused its discretion in allocating entire tax debt to husband where the value of certain marital assets was dependent on outcome of a third-party lawsuit).

Here, the potential liability based on the lease lawsuit was approximately $300,000. Accordingly, in providing for an equitable distribution of marital property, the trial court could not make its allocation of marital property and marital debt without regard to whether the marital debt arising from the lawsuit was likely to be very small or as much as $300,000. *See In re Marriage of Balanson, supra,* 25 P.3d at 36 (if a trial court's error in dividing marital property affects a large percentage of the marital estate, remand to the trial court to correct the error is required).

 Accordingly, just as a trial court is required to allocate the contingent value of assets in pensions and trusts, it must similarly determine the value of a contingent marital debt. It may do so in one of two ways. First, on the basis of testimony of the parties or possibly expert testimony, it may determine the potential obligation, discounted to reflect the percentage chance of liability. *See Turner, supra.* Second, the trial court may otherwise divide the marital assets and debts, reserving jurisdiction to allocate the contingent marital debt until such time as the amount of such contingent debt has been determined. Indeed, the parties' briefs refer to settlement discussions in connection with the lease litigation, and so it is entirely possible that the amount of the lease liability has already been determined. Otherwise, the court could await the conclusion of the lease litigation, at which time there would be a definite, known liability, which could then be allocated between husband and wife.

### III. Marital Fault

 Because the issue may arise on remand, we address husband's contention that the trial court improperly considered marital fault in its allocation of the potential lease liability.

 A trial court has great latitude to effect an equitable distribution of marital property, and an appellate court may not disturb the trial court's decision absent a clear abuse of discretion. *In re Marriage of Balanson, supra.*

 Marital fault or misconduct may not be considered by the trial court when it is dividing the marital assets. *In re Marriage of Casias, supra.* Economic fault, however, may be considered. That concept comes into play in extreme cases, such as a spouse's dissipation of marital assets in the contemplation of divorce, and it must be strictly confined so as not to circumvent the prohibition against consideration of marital fault. *In re Marriage of Hunt, supra.*

We reject husband's claim that the court was simply punishing him for the failure of the business and improperly relying upon marital, rather than economic, fault by assigning him sole responsibility for the potential lease liability. Husband acknowledged that the parties had lived modestly prior to wife's personal injury settlement and that the settlement proceeds provided the means for them to acquire a majority of their marital assets. There was also substantial evidence in support of the trial court's findings re-

garding husband's lack of credibility and his actions in transferring, withdrawing, and concealing a significant amount of those funds in violation of the automatic temporary injunction. As for the lease default, it is uncontradicted that husband unilaterally stopped making rent payments without wife's knowledge or consent, and that even though wife was responsible for the quarterly sales tax returns for the business, she had no meaningful role in the operation or management of the business.

As husband admits, the trial court appropriately remedied his dissipation of assets by including the funds he had dissipated as part of the marital estate. However, in light of husband's actions in stopping the lease payments when he had money to continue making them, we are not persuaded that husband was being punished for the failure of the business. Rather, husband's actions were deliberate and committed in circumstances where wife was neither consulted nor given any opportunity to mitigate the potential damages. Consequently, the trial court did not err in considering these circumstances as economic fault, and it may do so again in determining the proper allocation of the lease debt on remand.

 We also note that despite husband's contention that the demise of the business has left him unemployed, he has not challenged the court's finding that he can earn approximately $50,000 annually as an engineer. Therefore, we conclude that husband's employment status did not afford him any basis for relief from the property division and that issue need not be revisited on remand.

### IV. Appropriate Business Entity

We also reject husband's contention that the trial court's failure to designate which business entity, the parties' corporation or limited liability company, incurred the lease obligation improperly altered the lessor's rights against the parties.

The trial court has jurisdiction to enter orders only as between the parties and cannot affect the rights of a third-party creditor. See In re Marriage of Lafaye, 89 P.3d 455 (Colo.App.2003)(court can apportion tax liabilities between the parties even though collection efforts by the Internal Revenue Service would be joint and several).

Here, the lessor's right of recovery against husband and wife is based on their individual liability under their respective personal guarantees. In contrast, the potential debt stemming from the lease default must be allocated between the parties in this action as a part of the property division. The issue of economic fault based upon husband's actions in the management of the parties' business, regardless of whether he was acting under the aegis of the corporation or the limited liability company, only impacts the allocation of the lease debt between the parties, not the rights of the lessor. Consequently, any confusion by the court as to which of the parties' business entities was liable under the lease was irrelevant and not the basis for reversible error.

### V. Maintenance and Attorney Fees

Given our disposition, the court must reconsider the maintenance award on remand. See In re Marriage of Balanson, supra (in view of the need to reconsider the property division, the trial court on remand will be required to reconsider the maintenance award based on the parties' current economic conditions).

In addition, we exercise our discretion pursuant to C.A.R. 39.5 and direct the trial court to consider wife's request for attorney fees incurred in this appeal under § 14–10–119, C.R.S.2005.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge GRAHAM and Judge FURMAN concur.