SUMMARY August 22, 2024 2024COA95 No. 22CA2182, In re Marriage of Smith — Family Law —
Dissolution — Disposition of Property — Irrevocable Family Trust — Donative Third Party Instruments In this domestic relations case, husband appeals from the district court’s permanent orders concerning the division of the parties’ marital estate. A division of the court of appeals considers whether wife’s beneficiary interest in an irrevocable family trust constitutes property or an economic circumstance. The division concludes that wife’s interest in the family trust was discretionary and, therefore, was not property. The division then concludes, as a matter of first impression, that wife’s trust interest was not an economic circumstance because her father’s power of appointment, as the primary beneficiary of the family trust, rendered her interest The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion. 
 revocable under section 14-10-113(7)(b), C.R.S. 2023. The division rejects husband’s additional contentions and affirms the judgment.
 COLORADO COURT OF APPEALS 2024COA95 Court of Appeals No. 22CA2182 Boulder County District Court No. 20DR30188 Honorable William G. Meyer, Judge In re the Marriage of Sarah Bland Smith, Appellee, and James F. Butterworth, Appellant. JUDGMENT AFFIRMED Division VII Opinion by CHIEF JUDGE ROMÁN Tow and Kuhn, JJ., concur Announced August 22, 2024 Caplan and Earnest, LLC, Craig A. Weinberg, Andrew C. Littman, Boulder, Colorado, for Appellee Cox Baker Paige & Bailey, LLC, James S. Bailey, Castle Rock, Colorado, for Appellant Polidori, Franklin, Monahan, & Beattie, LLC, Robin Lutz Beattie, Lakewood, Colorado; Harrington Brewster Mahoney Smits P.C., Emma A. Fletcher, Denver, Colorado, for Amicus Curiae The Colorado Bar Association, Family Law Section 
1 ¶ 1 In this dissolution of marriage case between Sarah Bland Smith (wife) and James F. Butterworth (husband), husband appeals the district court’s allocation of the marital estate. He contends that the court erred by determining that wife’s beneficiary interest in an irrevocable family trust was neither property nor an economic circumstance. To resolve this issue, we must determine, as a matter of first impression, whether wife’s father’s power of appointment, as the primary beneficiary of the trust, rendered wife’s discretionary trust interest revocable under section 14-10-113(7)(b), C.R.S. 2023. We conclude that it did, precluding wife’s trust interest from the court’s consideration. We reject husband’s additional contentions and affirm the judgment. I. Background ¶ 2 The parties married in 2007, and wife initiated the dissolution proceeding about thirteen years later. ¶ 3 Early in the proceedings, husband requested that wife disclose information about an irrevocable family trust created by her stepmother that named wife as a beneficiary. Wife filed a motion for determination of a question of law, arguing that any interest she had in the family trust did not constitute property and was not an 
2 economic circumstance relevant to the dissolution proceeding. She attested that she had not received any distributions from the trust and argued that the trustee, who was her father, had sole discretion over the distributions. She further argued that her father, as the primary beneficiary, had a power of appointment over the trust property, which he could use to revoke her trust interest. The district court granted wife’s motion and did not further consider her trust interest when dissolving the marriage. ¶ 4 After a six-day hearing, the district court dissolved the marriage and entered permanent orders. As relevant here, the court determined that husband did not have a separate property interest in the parties’ marital home (2042 Alpine); a lot adjacent to 2042 Alpine that the parties converted into their yard (2032 Alpine); and a recently sold condominium in New York City (NY Condo). The court allocated 2042 Alpine and 2032 Alpine to wife, and it equally divided the equity from the NY Condo. The court also determined that although wife had recently sold approximately $4 million of their stock shares in Apple Inc., she did not improperly dissipate the marital estate. It found that she had done so to pay down marital debt and facilitate husband’s purchase of a new home. The 
3 court then divided the parties’ $49.5 million marital estate, allocating to husband net equity of about $25 million and to wife the remaining $24.5 million. II. Wife’s Family Trust ¶ 5 Husband contends that the district court erred by concluding that wife’s beneficiary interest in the family trust was neither property nor an economic circumstance. We discern no error. A. Legal Principles ¶ 6 When a court divides the marital estate in a dissolution proceeding, it must first determine whether an interest constitutes property. In re Marriage of Cardona, 2014 CO 3, ¶ 12. In making this determination, the court “focus[es] on whether the spouse has an enforceable right to receive a benefit.” Id. at ¶ 26. When a spouse has a present, fixed right to a benefit, even if that benefit will not occur until sometime in the future, that constitutes a property interest. In re Marriage of Balanson, 25 P.3d 28, 41 (Colo. 
4 2001) (Balanson II).
1 However, interests that are speculative are mere expectancies and do not constitute property. Cardona, ¶ 13. ¶ 7 We review de novo a court’s determination of a question of law under C.R.C.P. 56(h).
2 See Henisse v. First Transit, Inc., 247 P.3d 577, 579 (Colo. 2011). We also interpret de novo the language of a trust and the law governing it. See In re Marriage of Blaine, 2021 CO 13, ¶ 14; Denver Found. v. Wells Fargo Bank, N.A., 163 P.3d 1116, 1122 (Colo. 2007). B. Discretionary Interest ¶ 8 Husband contends that the district court erred by determining that wife only has a discretionary interest in the family trust. We discern no error. ¶ 9 Wife, her sisters, and her father are eligible beneficiaries of the family trust. The trust directs the following distributions: My Trustees shall pay or apply all or any part of the net income [and principal] to or for the benefit of any one or more of the Eligible Beneficiaries, in such proportions, equal or 1 In In re Marriage of Balanson, 25 P.3d 28, 41 (Colo. 2001) (Balanson II), the supreme court affirmed in part and reversed in part In re Marriage of Balanson, 996 P.2d 213 (Colo. App. 1999) (Balanson I). 2 The parties do not dispute that no genuine issues of material fact exist concerning the district court’s C.R.C.P. 56(h) ruling. 
5 unequal or all to one person that my Trustees in their discretion consider advisable for any such Eligible Beneficiary’s maintenance in health and reasonable comfort, complete education . . . or support in such Eligible Beneficiary’s accustomed manner of living. (Emphasis added.) ¶ 10 Upon wife’s father’s death, any remaining trust property not effectively appointed through her father’s power of appointment (discussed in more detail in Part II.C below) would be placed in separate “[l]ifetime [t]rusts” for wife and her sisters. Wife’s lifetime trust is to be created under terms substantially similar to that of the family trust, and it has the same terms for distributions to wife and her descendants. After wife’s death, the property in her lifetime trust would be given to her descendants, also in trust. ¶ 11 The district court determined that, based on these provisions, distributions of income and principal from the trust — and likewise her later lifetime trust — are “totally within the discretion of the trustee.” It concluded that wife’s interest is not property subject to the court’s allocation. ¶ 12 “Where the trust permits the trustees to distribute to a beneficiary or beneficiaries so much, if any, of the income and 
6 principal as they in their discretion see fit to distribute, a beneficiary has no property interest or rights in the undistributed funds.” In re Marriage of Rosenblum, 602 P.2d 892, 894 (Colo. App. 1979); accord In re Marriage of Jones, 812 P.2d 1152, 1156-57 (Colo. 1991). Even if the trust directs that a trustee, within their discretion, shall pay a beneficiary income and principal, the settlor’s intent to bestow discretion over that distribution can render the beneficiary’s interest a mere expectancy. Jones, 812 P.2d at 1156; see 2 Austin Wakeman Scott & Mark L. Ascher, Scott & Ascher on Trusts § 13.2.3, at 915 (6th ed. 2020) (noting that under such terms, “the beneficiary is ordinarily entitled only to what the trustee in a proper exercise of discretion decides to distribute”); see also § 15-5-103(18), C.R.S. 2023 (defining settlor as a person “who creates, or contributes property to, a trust”). ¶ 13 Although the family trust indicates that the trustee “shall pay” the income and principal to the eligible beneficiaries, the plain language of the trust grants the trustee the “discretion” to determine any distribution to any one or more of the beneficiaries that the trustee considered “advisable.” It further provides that the trustee can make “unequal” distributions, including to only one of 
7 the eligible beneficiaries. This broad discretionary authority includes the trustee’s power to withhold distributions from wife. See Jones, 812 P.2d at 1157. ¶ 14 The trustee’s discretion over wife’s interest is further demonstrated elsewhere in the family trust. It directs that when making a discretionary distribution, the trustee is required to give primary consideration to wife’s father’s needs, has no obligation to consider wife’s needs, and cannot distribute anything to wife unless the trustee expects to have enough trust property to adequately provide for wife’s father throughout his lifetime. Together, these provisions demonstrate that wife’s stepmother intended to grant the trustee complete discretion over distributions, if any, to wife. ¶ 15 We are not persuaded otherwise by United States v. Delano, 182 F. Supp. 2d 1020 (D. Colo. 2001). In that case, the federal district court determined that the defendant’s interest in a testamentary trust constituted property for purposes of foreclosing on a federal tax lien. Id. at 1021-24. The court noted that the use of the phrase “shall pay” suggested the settlor’s intent to compel some form of distribution to the defendant despite the trustee’s discretion over the amount of any particular distribution. Id. at 
8 1023. The court analyzed the entirety of the trust to determine the settlor’s intent and concluded that “[b]ased upon [the trust’s] other provisions,” the settlor intended the defendant to receive trust distributions. Id. However, the court emphasized that the defendant was the sole beneficiary, served as the co-trustee, and had the authority to terminate the trust and retain the trust property. Id. Given these additional indications of the settlor’s intent in Delano, we do not agree with husband that the mere use of the phrase “shall pay” when directing a discretionary distribution always creates an enforceable property interest. See Jones, 812 P.2d at 1156-57. And, unlike the circumstances in Delano, the family trust, as a whole, indicates wife’s stepmother’s intent that the trustee has discretion over any distributions to wife. ¶ 16 The other federal and out-of-state cases that husband cites in support of his contention addressed legal issues not presented in this dissolution of marriage case, and the language of those trust provisions was different. See Magavern v. United States, 415 F. Supp. 217, 219-21 (W.D.N.Y. 1976) (addressing a tax lien for unpaid federal taxes on a party’s trust interest under New York law), aff’d, 550 F.2d 797 (2d Cir. 1977); United States v. Taylor, 254 
9 F. Supp. 752, 755-56 (N.D. Cal. 1966) (addressing a federal tax lien on a trust interest under California law); McElrath v. Citizens & S. Nat’l Bank, 189 S.E.2d 49, 50-52 (Ga. 1972) (reviewing whether a mandatory trust distribution to the testator’s grandchildren reduced a father’s obligation to financially support those children). Moreover, the rulings in those cases, like Delano, are not binding on us. See Madalena v. Zurich Am. Ins. Co., 2023 COA 32, ¶ 33 (“[W]e are not bound by out-of-state decisions.”); Buckley Powder Co. v. State, 70 P.3d 547, 557 (Colo. App. 2002) (“Lower federal courts have no jurisdiction over state courts, and their decisions . . . do not bind Colorado state courts.”). ¶ 17 The district court therefore did not err by concluding that wife’s interest in the family trust is discretionary. C. Revocable Interest ¶ 18 Husband next contends that the district court erred by determining that wife’s father’s power of appointment rendered wife’s trust interest revocable and precluded it from the court’s consideration under section 14-10-113(7)(b). We disagree. ¶ 19 When dividing the marital estate, generally, the district court may consider a spouse’s interest in a discretionary trust as an 
10 economic circumstance, even if it is not property. Jones, 812 P.2d at 1158; Rosenblum, 602 P.2d at 894; see § 14-10-113(1)(c). However, the court’s consideration of a spouse’s interest in such a trust may be limited by section 14-10-113(7)(b). This statute states, “[P]roperty” and “an asset of a spouse” shall not include . . . any interest under any donative third party instrument which is amendable or revocable, including but not limited to third-party wills, revocable trusts, life insurance, and retirement benefit instruments, nor shall any such interests be considered as an economic circumstance or other factor. Id. ¶ 20 The family trust granted wife’s father a power of appointment over the trust property upon his death. Her father could appoint the trust property outright or through a newly created trust, within his discretion. ¶ 21 The district court found that any beneficial interest wife had in the trust was subject to this power of appointment. The court determined that it gave wife’s father the power to dispose of the family trust property, which would in turn revoke wife’s trust interest. The court then concluded that any interest wife had in the 
11 family trust was revocable and that section 14-10-113(7)(b) precluded the court from considering that interest. ¶ 22 Husband argues that the district court interpreted “revocable” in section 14-10-113(7)(b) too broadly when it determined that a power of appointment within the irrevocable family trust triggered the application of the statute. When interpreting a statute, we strive to determine and give effect to the legislature’s intent. In re Marriage of Zander, 2021 CO 12, ¶ 13. We first look to the statute’s plain language, construing that language in accordance with its ordinary and natural meaning. Id. If the statutory language is clear and unambiguous, we apply it as written. Id. But if it is ambiguous, we enlist other tools of statutory interpretation, including legislative history, to discern the legislature’s intent. In re Marriage of Garrett, 2018 COA 154, ¶ 20. ¶ 23 To address this issue, we must determine whether “revocable” in section 14-10-113(7)(b) applies to “any interest” or “any donative third party instrument.” A plain reading of the statute does not provide a clear answer. As written, the term “revocable” in the phrase “any interest under any donative third party instrument which is . . . revocable” could reasonably be read to modify either 
12 “any interest” or “any donative third party instrument.” § 14-10-113(7)(b); see Garrett, ¶ 20 (noting that a statute is ambiguous if it is susceptible of more than one reasonable meaning). ¶ 24 Given this ambiguity, we look to the legislative history of section 14-10-113(7)(b). In 2001, a division of this court concluded that a vested remainder interest in a revocable or modifiable trust was a property interest. In re Marriage of Gorman, 36 P.3d 211, 213 (Colo. App. 2001), superseded by statute, Ch. 270, sec. 1, § 14-10-113(7)(b), 2002 Colo. Sess. Laws 1055, as recognized in In re Marriage of Dale, 87 P.3d 219, 224 (Colo. App. 2003). Following that decision, the legislature enacted section 14-10-113(7)(b) to overturn that conclusion. See Dale, 87 P.3d at 224. ¶ 25 While Gorman addressed a revocable trust, the speakers in support of the amendment commented that enacting this statutory amendment would address the “revocable interest problem” and that it applied to “anything that can be revoked.” Hearing on S.B. 02-160 before the S. Judiciary Comm., 63d Gen. Assemb., 2d Reg. Sess. (Mar. 20, 2002) (statements of Sen. Robert Hernandez and Ron Litvak) (emphasis added). Other comments made to the 
13 legislature further clarified that the amendment was intended to address “interests that can be revoked,” Hearing on S.B. 02-160 before the H. Comm. on Civ. Just. & Judiciary, 63d Gen. Assemb., 2d Reg. Sess. (Apr. 25, 2002) (statement of Ron Litvak) (emphasis added), and that “the revocable interest” was the “heart of” the amendment, Hearing on S.B. 02-160 before the H. Comm. on Civ. Just. & Judiciary, 63d Gen. Assemb., 2d Reg. Sess. (Apr. 18, 2002) (statement of William Hunnicutt) (emphasis added). From all this, we glean that the legislature’s concern was not just with revocable instruments, but any interest that is revocable. We therefore conclude that the legislature intended “revocable” within section 14-10-113(7)(b) to modify “any interest.” ¶ 26 And when we review the other language within section 14-10-113(7)(b), this interpretation is supported by subsection (7)(b)’s repeated references to and focus on a spouse’s interest. Indeed, it is the spouse’s interest that is precluded from the court’s consideration under this subsection. Cf. Portercare Adventist Health Sys. v. Lego, 2012 CO 58, ¶ 12 (construing statutory words and phrases together and in context). Moreover, the legislature’s focus on the spouse’s interest is consistent with the process by 
14 which the court determines whether a spouse has property subject to the court’s allocation, which likewise analyzes the interest held by the spouse and its enforceability, not necessarily the instrument that happens to hold that interest. See Cardona, ¶ 12; see also In re Marriage of Joel, 2012 COA 128, ¶ 19 (noting that we must construe the dissolution of marriage statutes in harmony where possible). ¶ 27 Moving then to the ordinary and natural meaning of “revocable,” that term is defined as “[c]apable of being canceled or withdrawn.” Black’s Law Dictionary 1579 (11th ed. 2019); see also Zander, ¶ 13 (recognizing that when the legislature does not include a statutory definition, we may consult a recognized dictionary). Given this definition, section 14-10-113(7)(b) would preclude the court from considering any interest in a donative third party instrument as an economic circumstance or property if that interest is capable of being canceled or withdrawn. ¶ 28 However, husband argues that we should limit the scope of “revocable” to mean “revocable by the settlor,” in accordance with that term’s definition in the Colorado Uniform Trust Code (CUTC), which was adopted in 2018. § 15-5-103(17) (stating that for 
15 purposes of the CUTC, “‘[r]evocable,’ as applied to a trust, means revocable by the settlor without the consent of the trustee or a person holding an adverse interest”). But nothing within the language of section 14-10-113(7)(b), or the Uniform Dissolution of Marriage Act (UDMA), §§ 14-10-101 to -133, C.R.S. 2023, demonstrates any legislative intent to import the CUTC’s definition of “revocable.” And our survey of the UDMA reveals that when the legislature intended to rely on a statutory definition outside that act, the UDMA expressly references the applicable statute. See, e.g., § 14-10-124(1.3)(c), C.R.S. 2023 (adopting the meaning of sexual assault as set forth in section 19-1-103, C.R.S. 2023). Had the legislature intended to adopt the CUTC’s definition, it knew how to do so, but it did not. See Coats v. Dish Network, L.L.C., 2013 COA 62, ¶ 20, aff’d, 2015 CO 44. We cannot add words to the statute and import that definition now. See Blaine, ¶ 21. ¶ 29 Thus, applying the ordinary and natural meaning of a revocable interest as set forth by section 14-10-113(7)(b), we conclude that wife’s father’s power of appointment fell within the scope of this subsection. Her father could use the power of appointment upon his death to dispose of the family trust property 
16 without regard to wife’s trust interest. See Univ. Nat’l Bank v. Rhoadarmer, 827 P.2d 561, 562 (Colo. App. 1991) (“A power of appointment is a power of disposition . . . .”). By exercising that power, he could cancel wife’s discretionary interest in the trust’s income and principal. We therefore agree with the district court that wife’s father’s power of appointment rendered wife’s trust interest revocable for purposes of section 14-10-113(7)(b).
3 See Marc A. Chorney, Interests in Trusts as Property in Dissolution of Marriage: Identification and Valuation, 40 Real Prop., Prob. & Tr. J. 1, 18 (2005) (“The practical effect of exercising a power of appointment on the beneficial interest of a divorcing spouse is no different than if a settlor of a revocable trust amended or revoked the terms of the trust altering or eliminating the beneficial interest.”); cf. In re Marriage of Balanson, 107 P.3d 1037, 1040-41 (Colo. App. 2004) (noting a district court’s determination that a 3 The record does not reveal that wife was presently receiving any income or distributions from the family trust and, as the district court found, husband made no allegation that she had received any trust distributions. We thus do not address the extent to which a court may consider as an economic circumstance the trust income and distributions a party is actually receiving when it allocates the marital estate. 
17 testamentary power of appointment rendered the wife’s trust interest only an expectancy interest) (Balanson III). ¶ 30 This conclusion is consistent with cases outside our jurisdiction. See Noble v. Noble, 2020 VT 105, ¶¶ 5, 8 (upholding the district court’s conclusion that the wife’s interest in an irrevocable trust could be eliminated by the wife’s father’s power of appointment); S.L. v. R.L., 774 N.E.2d 1179, 1182 (Mass. App. Ct. 2002) (“The wife’s remainder interest in [the] trust was susceptible of complete divestment upon the wife’s mother’s exercise of the power reserved to her to appoint the remainder trust beneficiaries under the provisions of her will.”); In re Marriage of Beadle, 1998 MT 225, ¶¶ 7, 9, 33, 37-38 (recognizing that a party’s interest in a trust remained contingent until a power of appointment expired). ¶ 31 Still, husband argues that section 14-10-113(7)(b) cannot apply to the irrevocable family trust. He relies on Balanson III and Dale, which recognized that section 14-10-113(7)(b) did not apply to a spouse’s vested remainder interest in an irrevocable trust, even though it could be subject to divestment or defeasance. Balanson III, 107 P.3d at 1042, 1044, 1046; Dale, 87 P.3d at 224. But importantly, the trust interests analyzed in those cases were only 
18 subject to the condition of survivorship. See Balanson III, 107 P.3d at 1040; Dale, 87 P.3d at 223. That is not the case here. The irrevocable nature of the family trust only meant that wife’s stepmother could not revoke the trust instrument. See § 15-5-103(17), (18). Wife’s trust interest was still subject to her father’s power of appointment, and his exercise of that power could revoke her interest and deprive her of the trust property. See § 14-10-113(7)(b). ¶ 32 Husband also argues that our interpretation of section 14-10-113(7)(b) would mean that the legislature impliedly overruled the conclusions in Jones and Rosenblum that allowed the district courts there to consider a discretionary trust interest as an economic circumstance. Jones, 812 P.2d at 1158; Rosenblum, 43 Colo. App. at 147, 602 P.2d at 894. However, again, the trusts at issue in those cases did not consider a party’s interest that was subject to revocation. They only determined that, unless otherwise limited, a discretionary trust interest, while not property, could be considered an economic circumstance. 
19 ¶ 33 In sum, the district court did not err by excluding wife’s discretionary and revocable interest in the family trust from its consideration as a property interest or economic circumstance. III. Husband’s Alleged Separate Property ¶ 34 Husband next contends that the district court reversibly erred by determining that he had no separate property interest in 2042 Alpine, 2032 Alpine, or the NY Condo proceeds. We disagree. A. Additional Facts ¶ 35 Before the marriage, husband accumulated a series of patents. He received little financially from these patents until he initiated multiple lawsuits, alleging that various companies had infringed on his patents. Shortly after the marriage, husband negotiated a settlement in the first of these lawsuits, and over the next few years, he secured additional settlements in his favor. Through these lawsuits, husband received over $27 million. ¶ 36 After the first settlement, the parties used the proceeds to purchase 2042 Alpine and 2032 Alpine. When purchased, the properties were titled in only husband’s name. Wife indicated that they did so because she was a neurologist and they wanted to protect the properties from any potential medical malpractice 
20 claims lodged against her. Ten years later, husband executed a quitclaim deed on 2042 Alpine, granting that property to himself and wife as tenants in common. Husband did not execute a similar deed for 2032 Alpine. ¶ 37 The parties also used a portion of the patent litigation settlement money to buy the NY Condo and titled it in a holding company created by husband. The parties later sold the NY Condo and received net equity of about $373,000. ¶ 38 At the dissolution hearing, husband argued that the patent litigation settlements were largely his separate assets because they were derived from his premarital patents. He asked the district court to set aside as his separate property the settlement money he contributed to buy 2042 Alpine ($2.235 million) and 2032 Alpine ($1.07 million). He also argued that because he contributed his separate property to purchase the NY Condo, the court should set aside to him the sale proceeds ($373,000). ¶ 39 The district court assumed, without deciding, that the patent litigation settlements were husband’s separate assets. However, it determined that husband had gifted to the marriage the separate funds used to buy 2042 Alpine and 2032 Alpine. It also determined 
21 that the separate funds used to buy the NY Condo were so commingled with marital assets that they had lost their separate character. B. Legal Principles ¶ 40 Before dividing the marital estate, the district court must determine whether an asset is marital and subject to the court’s division or separate and shielded from division. In re Marriage of Medeiros, 2023 COA 42M, ¶ 49; see § 14-10-113(1). ¶ 41 All property acquired during the marriage is presumed marital. § 14-10-113(3). However, a party may overcome this presumption by showing that the property was acquired in exchange for that party’s separate assets. See § 14-10-113(2)(b). The party seeking to have the property declared separate bears the burden to establish that it retains its separate character. Medeiros, ¶ 52; see also In re Marriage of Seewald, 22 P.3d 580, 586 (Colo. App. 2001) (“A spouse claiming ownership under [the] exchange provision must prove a series of exchanges back to an original separate asset.”). ¶ 42 The district court’s classification of property as marital or separate is a legal determination that is based on the court’s factual 
22 findings. In re Marriage of Morton, 2016 COA 1, ¶ 5. We defer to the court’s factual findings unless they are clearly erroneous and independently review its application of the law. Id. C. Patent Litigation Settlements ¶ 43 As an initial matter, wife argues that we need not address husband’s separate property contentions because, as a matter of law, the patent litigation settlements were marital assets and thus 2042 Alpine, 2032 Alpine, and the NY Condo never had a separate property component. However, because we discern no error in the district court’s determinations that any separate assets husband used to purchase these properties lost their separate character, we, like the district court, will assume, without deciding, that the patent litigation settlements were husband’s separate property.
4 D. 2042 Alpine ¶ 44 Husband argues that the district court erred by determining that he had no separate property interest in 2042 Alpine. We disagree. 4 We therefore express no opinion as to whether post-marital settlement proceeds from lawsuits concerning premarital patents are marital or separate assets. 
23 ¶ 45 Property that a spouse places in joint ownership during the marriage reflects an intent by the donor spouse to make a gift to the marriage. Balanson II, 25 P.3d at 37; In re Marriage of Krejci, 2013 COA 6, ¶ 4; see also Dale, 87 P.3d at 227 (recognizing that whether a gift occurred is a question of fact for the district court to resolve). When such a transfer occurs, the court may presume that the jointly owned property is marital absent clear and convincing evidence to the contrary. Balanson II, 25 P.3d at 37; Krejci, ¶ 4. ¶ 46 The district court found that husband contributed his separate assets to purchase 2042 Alpine and initially titled the property only in his name. The court next found that husband later transferred title to himself and wife as tenants in common, and given this transfer to joint ownership, it presumed that 2042 Alpine, in its entirety, was marital property. The court also found that husband did not overcome this presumption of marital property, and, thus, it determined that he had gifted these separate assets to the marriage. ¶ 47 Husband does not dispute executing the quitclaim deed. However, he argues that this deed does not support the presumption that he gifted his separate property to the marriage. 
24 In his view, that presumption applies only to property placed in joint tenancy, which confers to each joint tenant a right to possess the entire property; it does not apply to tenants in common, who own separate fractional shares of a property. See Taylor v. Canterbury, 92 P.3d 961, 964 (Colo. 2004). He argues that with the quitclaim deed, he gifted, at most, half of his separate property interest to the marriage and retained the remaining interest as his separate property. ¶ 48 While tenants in common own separate fractional shares, they still receive joint ownership of the property. See Reishus v. Bullmasters, LLC, 2016 COA 82, ¶ 24. And the presumption that a spouse’s transfer of title renders the property marital applies to any form of legal title that gives both spouses joint ownership in the property, including tenancy in common. See 1 Brett R. Turner, Equitable Distribution of Property § 5:43, at 751 (4th ed. 2021); cf. § 14-10-113(3) (including “tenancy in common” as a “form of coownership” when determining marital property). ¶ 49 Moreover, husband’s quitclaim deed did not indicate any intent for him to retain a portion of his interest as his separate property. Husband quitclaimed the entirety of 2042 Alpine to 
25 himself and wife as tenants in common, and the deed identified no specific fractional interest withheld. We therefore do not agree with husband that holding title as tenants in common precluded the district court from finding that husband intended to gift his separate property interest in 2042 Alpine to the marriage. See Balanson II, 25 P.3d at 37; Krejci, ¶ 4. ¶ 50 The record also supports the district court’s determination that husband did not overcome the marital property presumption by clear and convincing evidence. See Balanson II, 25 P.3d at 37; Krejci, ¶ 4; see also MGM Supply Co. v. Indus. Claim Appeals Off., 62 P.3d 1001, 1005 (Colo. App. 2002) (“Whether [the] burden of proof has been satisfied is a question of fact . . . .”). Although husband claimed a separate property interest, wife testified that, when they bought 2042 Alpine, they intended it to be marital property and had agreed to execute a joint ownership deed when she was no longer at risk of having a medical malpractice claim lodged against her. Wife also testified that there was no indication that she was not an equal owner of 2042 Alpine, highlighting that they jointly refinanced the property, deposited those funds into their joint account, and used marital funds to pay the mortgage. “We are not at liberty to 
26 re-evaluate the conflicting evidence and set aside findings supported by the record.” In re Marriage of Evans, 2021 COA 141, ¶ 45; see also In re Marriage of Thorburn, 2022 COA 80, ¶ 49 (noting that credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the district court’s sole discretion). ¶ 51 The district court therefore did not err by concluding that husband gifted to the marriage the separate assets he used to buy 2042 Alpine. E. 2032 Alpine ¶ 52 We also reject husband’s argument that the district court erred by determining that 2032 Alpine was marital property. ¶ 53 A spouse may gift their separate property to the marriage when there is simultaneously intent, delivery, and acceptance of the gift. See Dale, 87 P.3d at 227; see also Balanson II, 25 P.3d at 37; Krejci, ¶ 4. We defer to the court’s finding of a gift unless the finding lacks record support. See Dale, 87 P.3d at 227. ¶ 54 The district court noted that title for 2032 Alpine was in husband’s name alone and that the money used to buy it came 
27 from the patent litigation settlements. But the court found that, when husband acquired 2032 Alpine, he intended the property to be marital and he intended to jointly own the property with wife. The court highlighted that, during the marriage, husband described 2032 Alpine as marital property shared with wife. The court concluded that husband gifted to the marriage any separate assets he used to buy 2032 Alpine. ¶ 55 Husband argues that even if he intended to make 2032 Alpine marital property, his intent alone was not enough to establish a valid gift to the marriage. He argues that because title remained solely in his name, he never delivered the gift to the marriage. However, the form in which title is held is not dispositive in determining whether property is marital. See Martinez v. Gutierrez-
Martinez, 77 P.3d 827, 828-29 (Colo. App. 2003); see also § 14-10-113(3). And in the absence of joint title, the court may consider any other relevant evidence when determining whether the spouse intended a gift to the marriage. See In re Marriage of Meisner, 715 P.2d 1273, 1275 (Colo. App. 1985). ¶ 56 Husband’s statements, highlighted by the district court, not only supported the court’s finding that he intended 2032 Alpine to 
28 be marital property, they also indicated that he believed he had effectuated the gift to the marriage. See Dale, 87 P.3d at 227. In particular, he confirmed that 2032 Alpine was their “marital property” and that merely placing wife’s “name on the deed doesn’t affect at all” its characterization as marital. Moreover, wife testified that they treated 2032 Alpine as their marital property, using it and 2042 Alpine as one property for the family. ¶ 57 We therefore are not persuaded that, under the circumstances here, the district court erred by finding that husband gifted to the marriage the separate property he used to acquire 2032 Alpine. See Meisner, 715 P.2d at 1275 (upholding the district court’s finding of marital property when evidence supported its finding that the husband intended to make a joint investment from his separate assets). F. NY Condo ¶ 58 We further reject husband’s contention that the district court erred by not setting aside as his separate property the equity from the NY Condo sale. 
29 ¶ 59 Separate property that is so commingled with marital property that the party cannot trace it back to its original separate form is marital property. In re Marriage of Corak, 2014 COA 147, ¶ 11. ¶ 60 The district court acknowledged that the parties purchased the NY Condo with the proceeds from the patent litigation settlements. But it found that any separate character those funds had was lost when husband commingled them with marital assets. The court thus determined that husband had not satisfied his burden to trace any part of this equity to his separate assets. ¶ 61 The record supports the district court’s determination. Evidence revealed that the parties used marital and separate funds to purchase the NY Condo for $4.3 million. While husband claimed that he used about $3.5 million of his separate assets, his expert confirmed that those funds were commingled with marital assets before husband and wife purchased the NY Condo. Then, during the marriage, any remaining separate character in those funds was lost through further commingling with marital property to execute a $3 million mortgage on the NY Condo and pay off the debt on another marital asset. Wife also testified that they used over $350,000 of marital funds to pay the mortgage. The court therefore 
30 did not clearly err by finding that husband failed to sufficiently trace a portion of the NY Condo sale proceeds to his separate assets. See id.; see also Medeiros, ¶ 52; Seewald, 22 P.3d at 586. ¶ 62 In sum, the district court did not err by declining to set aside any portion of 2042 Alpine, 2032 Alpine, or the NY Condo proceeds as husband’s separate property. IV. Overall Property Division ¶ 63 Husband next contends that the district court erred by effectuating a relatively equal division of the marital estate, arguing that he contributed substantially more to the accumulation of the marital estate and the court’s ruling did not indicate that it considered all the statutory factors. We discern no error. A. Legal Principles ¶ 64 The district court has great latitude to equitably divide the marital estate based on the facts and circumstances of the case. See LaFleur v. Pyfer, 2021 CO 3, ¶ 61. To achieve an equitable division, the court must consider all relevant factors. § 14-10-113(1). Such factors include each spouse’s contribution, financially and as a homemaker, to the acquisition of marital property; the value of property set aside to each spouse; the 
31 spouses’ economic circumstances; and any change to the value of a spouse’s separate property during the marriage. Id. ¶ 65 We may not disturb the district court’s decision absent a showing of a clear abuse of discretion, meaning that its decision was manifestly arbitrary, unreasonable, or unfair, or based on a misapplication of the law. See LaFleur, ¶ 61; Medeiros, ¶ 28. B. The Parties’ Contributions ¶ 66 The district court found that husband generated over $27 million from the patent litigation settlements and that this contribution to the marriage formed “the foundation” of the parties’ marital estate. The court also found that husband contributed “exponentially more than” wife to the success of that litigation and that husband’s investment strategy during the marriage allowed the parties to grow their marital estate. But the court determined that husband’s monetary contributions were not entitled to greater weight and did not outweigh wife’s contributions as “a homemaker, child co-rearer [and] . . . an emotionally supportive spouse.” The court found that wife sacrificed her career as a neurologist to care for the family and raise their children as a stay-at-home mother. It also found that throughout the marriage, wife performed most 
32 domestic responsibilities. The court then determined that both parties made substantial contributions to the marriage and that after considering all relevant factors, its relatively equal allocation of the marital estate was equitable. ¶ 67 Though husband believes that the district court should have placed greater weight on his financial contributions and given him a disproportionate share of the marital estate, it was within the court’s sound discretion to weigh the relevant factors and determine an equitable allocation of the marital estate. See In re Marriage of Powell, 220 P.3d 952, 959 (Colo. App. 2009). While wife’s noneconomic contributions were of a different character, that does not mean they were any less important to the acquisition and growth of the marital estate. See § 14-10-113(1)(a); In re Marriage of Burford, 26 P.3d 550, 557 (Colo. App. 2001). ¶ 68 Husband also suggests that the record does not support the district court’s findings about wife’s contributions. However, wife testified that, before the marriage, she operated her own medical practice and that, after the patent litigation settlements, she left her practice so that she could facilitate their marital lifestyle. She also testified that she supported husband throughout the marriage, 
33 including the patent litigation; completed most of the household tasks during the marriage; and cared for their children. ¶ 69 The district court thus weighed the parties’ relative contributions during the marriage to determine an equitable allocation of the marital estate. C. Other Statutory Factors ¶ 70 We also reject husband’s argument that the district court failed to consider the remaining statutory factors when it divided the marital estate. ¶ 71 The district court is not required to make specific findings as to each statutory factor; its findings need only be sufficient to allow us to determine whether its allocation of the marital estate is supported by competent evidence. Powell, 220 P.3d at 959. ¶ 72 The district court expressly indicated that it had “consider[ed] all the factors in § 14-10-113.” While it focused on the parties’ contributions and determined, with record support, that those contributions supported a relatively equal division, the court also acknowledged that husband made substantial gifts to the marriage from his separate property, which formed the foundation of the marital estate. See § 14-10-113(1)(b), (d). And the court discussed 
34 each party’s economic circumstances, including their abilities to earn incomes in excess of their reasonable financial needs. See § 14-10-113(1)(c). ¶ 73 In sum, the district court did not abuse its discretion by ordering a relatively equal allocation of the marital estate. V. Economic Fault ¶ 74 Finally, husband contends that the district court erred by determining that wife did not improperly dissipate the marital estate when she sold their Apple stock and by declining to account for the resulting lost assets when it allocated the marital estate. We are unpersuaded. A. Legal Principles ¶ 75 In dividing the marital estate, the district court must disregard marital misconduct. § 14-10-113(1); In re Marriage of Jorgenson, 143 P.3d 1169, 1173 (Colo. App. 2006). But, in extreme cases, the court may consider economic fault, such as a spouse’s dissipation of marital assets. In re Marriage of Hunt, 909 P.2d 525, 542 (Colo. 1995); Jorgenson, 143 P.3d at 1173. That is, when one spouse depletes the marital estate for an improper or illegitimate purpose in contemplation of the dissolution, the court may take such 
35 conduct into account when it allocates the estate. See In re Marriage of Riley-Cunningham, 7 P.3d 992, 995 (Colo. App. 1999). ¶ 76 Whether a spouse dissipated marital property is a question of fact. See Martinez, 77 P.3d at 831. We will not disturb the district court’s finding unless it has no record support. See id. B. Sale of Apple Stock ¶ 77 A few months after wife initiated the dissolution proceeding, she sold approximately $4 million of the parties’ Apple stock. Wife testified that she executed this sale with the intent to “preserve” their marital assets. She explained that the parties had agreed that husband could purchase a new home. She testified that shortly before husband was to close on his new home, he informed her that he needed an additional $2.75 million and that he intended to withdraw money from the parties’ securities backed line of credit (SBLOC). Wife testified that the SBLOC had only $975,000 of remaining credit and that husband wanted to increase the credit limit to $15.95 million. She said that increasing the SBLOC’s limit posed a substantial risk to their marital assets. She explained that the SBLOC relied on the successful performance of the investments and that given the “very risky market” in 2020, they could be 
36 financially ruined if the financial institution demanded payment on the SBLOC’s outstanding debt. She also noted such an event almost came to fruition a few years earlier. ¶ 78 Wife testified that in light of her concerns and husband’s impending home purchase, she sold the Apple stock. She explained that she then paid down the SBLOC debt, which allowed husband to use the SBLOC to buy his new home without increasing their credit limit. ¶ 79 The district court found that wife disposed of this marital asset without husband’s consent and in violation of the automatic temporary injunction imposed on this dissolution of marriage case. See § 14-10-107(4)(b)(I)(A), C.R.S. 2023 (restraining a party in a dissolution proceeding from disposing of marital property without the other party’s consent). However, it determined that her conduct did not rise to economic fault. The court explained that wife was motivated by husband’s insistence on using the SBLOC to purchase his new home. It found that she liquidated the Apple stock to pay 
37 down the SBLOC debt to facilitate his home purchase and not increase their SBLOC liability.
5 ¶ 80 Husband disagrees with the district court’s determination. He highlights that wife’s stock sale resulted in a substantial tax liability and forfeited almost $2 million of future profits. But economic fault is “strictly confined” to “extreme cases” where a spouse depletes the marital estate for an improper or illegitimate purpose in contemplation of the dissolution. Jorgenson, 143 P.3d at 1173; see Riley-Cunningham, 7 P.3d at 995. Although wife’s stock sale financially impacted the marital estate, the court credited wife’s explanation and determined, with record support, that she did not improperly dispose of the stock in contemplation of the dissolution of their marriage. See Jorgenson, 143 P.3d at 1173; Riley-Cunningham, 7 P.3d at 995. We must defer to this determination. See Martinez, 77 P.3d at 831; see also Thorburn, ¶ 49. 5 Wife also used a portion of the stock sale proceeds to pay off approximately $132,000 of her premarital student loan debt. To account for this payment, the district court included a $132,000 offset to wife in its property division. Neither party challenges this determination. 
38 ¶ 81 Still, husband complains that the district court should have allocated to wife the tax liability created by the stock sale. The parties confirmed that they had paid that liability before the permanent orders hearing. Therefore, this tax liability was no longer an outstanding marital debt. See In re Marriage of Turner, 2022 COA 39, ¶ 15 (recognizing that the determination of whether something is property subject to division is established as of the date of the permanent orders hearing when the hearing preceded the decree). In the absence of economic fault, the court was not obligated to allocate the paid tax liability, and it acted within its discretion by declining to otherwise account for that liability when allocating the marital estate. See Jorgenson, 143 P.3d at 1173; Riley-Cunningham, 7 P.3d at 995; cf. In re Marriage of Davis, 252 P.3d 530, 537-38 (Colo. App. 2011) (noting the district court’s discretion to sanction an individual for violating a court order); In re Marriage of Schmedeman, 190 P.3d 788, 791 (Colo. App. 2008) (acknowledging that, during a marriage, the spouses may dispose of property as they see fit). 
39 ¶ 82 We therefore will not disturb the district court’s determinations concerning wife’s disposal of the Apple stock.
6 VI. Disposition ¶ 83 The judgment is affirmed. JUDGE TOW and JUDGE KUHN concur. 6 Husband generally asserts that wife sold other stock shares after the permanent orders hearing. However, the district court addressed this issue in its post-trial order, and husband develops no legal argument contesting that decision. We therefore will not further address it. See In re Parental Responsibilities Concerning S.Z.S., 2022 COA 105, ¶ 29.