24CA1454 Marriage of Breining 09-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1454
El Paso County District Court No. 23DR30395
Honorable Jill M. Brady, Judge

---

In re the Marriage of

Jilayne Kay Breining-Robertson,

Appellee,

and

Christopher Alyn Breining,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BROWN
Dunn and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Jilayne Kay Breining-Robertson, Pro Se

Mark Anthony Law, Mark Anthony Barrionuevo, Colorado Springs, Colorado,
for Appellant

¶ 1 In this dissolution of marriage case involving Christopher Alyn Breining (husband) and Jilayne Kay Breining-Robertson (wife), husband appeals the property division and spousal maintenance aspects of the permanent orders. We affirm in part, reverse in part, and remand for additional proceedings.

## I. Relevant Facts

¶ 2 Wife petitioned to dissolve the parties' five-year marriage in 2023. In April 2024, husband moved to compel wife to produce certain mandatory financial disclosures under C.R.C.P. 16.2. In late May, the district court denied the motion.

¶ 3 A few days later, the district court held an evidentiary hearing, after which it entered a dissolution decree. As part of the permanent orders, the court found that the marital portion of wife's USAA 401(k) was $124,220, her life insurance policy had no cash surrender value, and her credit card debt was marital and subject to division. Based on these and other findings, it denied husband's request for an equalization payment and distributed the marital estate as follows:

| Marital Asset/Debt | Marital Value | Wife's Portion | Husband's Portion |
|---|---|---|---|
| Marital Home Proceeds | $90,684 | $24,852 | $65,832 |
| Vehicles | $12,250 | $7,580 | $4,670 |
| Investment Accounts | $2,947 | | $2,947 |
| Wife's USAA 401(k) | $124,220 | $104,220 | $20,000 |
| Other Retirement Accounts | $36,531 | $16,596 | $19,935 |
| Whole Life Insurance Policy | $0 | $0 | |
| Debts | ($48,583) | ($39,825) | ($8,758) |
| TOTAL | $218,049 | $113,423 (52%) | $104,626 (48%) |

¶ 4 In declining to award husband spousal maintenance, the court calculated wife's monthly gross income at $7,302 per month and husband's at $5,410.

## II. Request to Dismiss Appeal

¶ 5 To begin, we consider wife's request to dismiss husband's appeal on the basis that she never received husband's notice of appeal. Given that wife was able to file a substantive answer brief, fully presenting her arguments in opposition to his appeal, we deny the request.

### III. Request to Strike Answer Brief

¶ 6     Husband asks us to strike certain portions of wife's answer brief because she did not include citations or references to the record. *See* C.A.R. 28(b). Wife is not excused from complying with the appellate rules because she is unrepresented. *Gandy v. Williams*, 2019 COA 118, ¶ 8. Still, because we can understand wife's arguments despite the deficiencies in her brief, we deny this request. *See* C.A.R. 38(a); *see also Bruce v. City of Colorado Springs*, 252 P.3d 30, 32 (Colo. App. 2010) (electing to consider a party's deficient brief).

### IV. Property Division

¶ 7     Husband contends that the district court erroneously (1) set aside to wife as her separate property a portion of her USAA 401(k); (2) assigned a zero value to wife's life insurance policy; and (3) treated wife's credit card debt as marital. We address and reject each of these contentions.

#### A. Applicable Law and Standard of Review

¶ 8     Before dividing the marital estate, the district court must first determine whether each asset or debt is marital property, which is subject to division, or separate property, which is not.

§ 14-10-113(1), C.R.S. 2025. Assets acquired and debts incurred during the marriage are presumed marital, but this presumption can be rebutted with evidence proving an exception listed in section 14-10-113(2). § 14-10-113(3); *see In re Marriage of Jorgenson*, 143 P.3d 1169, 1171-72 (Colo. App. 2006) ("Marital liabilities include all debts that are acquired and incurred by [the spouses] during their marriage."). And although property a spouse acquired before the marriage is separate property, any appreciation in its value during the marriage is marital and divisible. § 14-10-113(1)(d), (4); *see In re Marriage of Cardona*, 321 P.3d 518, 521 (Colo. App. 2010), *aff'd on other grounds*, 2014 CO 3.

¶ 9     Next, the district court must value each asset or debt. *In re Marriage of Wright*, 2020 COA 11, ¶ 4; *Jorgenson*, 143 P.3d at 1172. The court may adopt either spouse's valuation or make its own, so long as the valuation is reasonable in light of the evidence as a whole. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 41.

¶ 10    Finally, the district court must equitably divide the marital estate, considering all relevant factors. § 14-10-113(1); *see In re Marriage of Evans*, 2021 COA 141, ¶ 50; *Wright*, ¶ 3; *see also Jorgenson*, 143 P.3d at 1172 (distribution of marital debts is like

4

property division).  The division must be equitable, but it need not be equal.  *Wright*, ¶ 3.

¶ 11    A district court has broad discretion to equitably divide the marital estate based on the particular facts and circumstances of each case, and we will not disturb its decision absent an abuse of that discretion.  *In re Marriage of Collins*, 2023 COA 116M, ¶ 19; *see* § 14-10-113(1); *In re Marriage of Smith*, 2024 COA 95, ¶ 67 (weighing the statutory factors is within the court's sound discretion).  A court abuses its discretion when it misapplies the law or its decision is manifestly arbitrary, unreasonable, or unfair. *Medeiros*, ¶ 28.  Specific findings on every statutory factor are not required, provided that the court's overall findings allow us to determine that its decision is supported by competent evidence. *Collins*, ¶ 19.

### B.    Wife's USAA 401(k)

#### 1.    Late Disclosure

¶ 12    The district court found, based on a March 2018 statement, that wife entered into the marriage with $65,537 in her USAA 401(k).  The court excluded this amount from its current value of $146,657, which was derived from an April 2024 statement.  The

court then added back a $43,100 loan that wife had taken out against it. In the end, the court calculated the marital share at $124,220; of this, $20,000 was allocated to husband, with the remainder going to wife.

¶ 13    Husband challenges the classification of $65,537 as wife's separate property, asserting that she disclosed the March 2018 statement just a week before the hearing and should have been precluded from admitting it. *See* C.R.C.P. 16.2(e)(2) (requiring that the parties make certain mandatory disclosures within forty-two days after service of a petition); C.R.C.P. 16.2(j) (authorizing sanctions for failure to comply). Wife counters that she timely and repeatedly disclosed the statement.

¶ 14    Even assuming wife did not timely disclose the statement, husband fails to explain how wife's allegedly late disclosure prejudiced his substantial rights. *See* C.R.C.P. 61 (an error is only reversible if it affects a party's substantial rights); *In re Marriage of Pawelec*, 2024 COA 107, ¶ 56 ("An error affects a party's substantial rights if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" (citations omitted)). Husband

simply states that the admission of the statement "cause[d] significant financial harm" because wife "was awarded solely $65,537 of the 401(k)." That "harm" stems from the probative force of the evidence, not from the fact that wife allegedly disclosed the document late. Absent a showing of prejudice resulting from the allegedly delayed disclosure, reversal is unwarranted. *See In re M.E.R-L.*, 2020 COA 173, ¶ 15.

### 2. Hearsay

¶ 15    Husband argues that the March 2018 statement was inadmissible hearsay under CRE 802. The statement is a four-page standard retirement account statement issued by USAA. Husband does not allege, nor do we see, that it was incomplete, marked, or altered in any way; his entire argument is that "there was no verification that [the statement] was true."

¶ 16    Without expressly referencing the statement, wife testified that the value of the account as of the date of the marriage was $65,537. Husband had notice that wife claimed that amount as her separate property, including through the joint asset and debt spreadsheet the parties filed with their joint trial management certificate and a stipulated exhibit reflecting wife's proposed property division. Yet,

7

on cross-examination, husband's counsel did not challenge wife's valuation or ask wife about the March 2018 statement, much less attempt to establish that the statement contained inaccurate information. Under these circumstances, we conclude that any error in admitting the statement over husband's hearsay objection was harmless. *See People in Interest of R.D.H.*, 944 P.2d 660, 664 (Colo. App. 1997) (concluding that any error in admitting evidence that is cumulative of other admissible evidence is harmless); *see also Medeiros*, ¶ 41 (we will affirm a court's valuation if it is reasonable in light of the evidence as a whole).

### 3. Division of the 401(k)

¶ 17    We reject husband's claim that awarding wife most of the marital portion of the USAA 401(k) was, by itself, unfair. We do not look at the court's division of a particular asset in isolation. Instead, the critical question is whether the *overall* property division was equitable and, as set forth below, we conclude that the court acted within its discretion. *See In re Marriage of Hunt*, 909 P.2d 525, 537-38 (Colo. 1995) (a division of pension benefits is only a part of the district court's equitable division of the overall marital

property, and an appellate court should not disturb the balance achieved by the division absent a clear abuse of discretion).

### C. Life Insurance Policy

¶ 18 The district court credited wife's testimony that her life insurance policy, despite its $250,000 "face value," held no cash surrender value and would soon expire. The court therefore valued the policy at zero and allocated it to wife.

¶ 19 Husband maintains that the district court clearly erred by finding that wife's "whole life insurance asset" had a zero value. But the life insurance policy at issue was not a whole life insurance policy that "can provide a combination of a death benefit and an accumulation of a cash value"; it was a term life insurance policy that provides for the payment of a death benefit but has no cash value. 24 *Colorado Practice Series, Elder Law* § 7:7, Westlaw (1st. ed. database updated Nov. 2024); *see also* 4 Pat Magarick & Ken Brownlee, *Casualty Insurance Claims* § 52:4, Westlaw (4th ed. database updated Aug. 2025) (explaining the difference between whole life insurance and term life insurance). The policy statement in the record reflects that it is a "[twenty] year level term series" with a "net death benefit" of $250,000 but does not reflect any cash

value. Moreover, because wife's testimony independently supports the court's valuation finding, we will not disturb it. *See Medeiros*, ¶ 41; *see also In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) (the district court can believe all, part, or none of a witness's testimony).

¶ 20    Having concluded that the district court did not err by finding that the life insurance policy had no value, we need not consider husband's assertion that awarding it solely to wife was an abuse of discretion.

### D.    Wife's Credit Card Debt

¶ 21    At the hearing, the parties agreed that wife incurred credit card debt during the marriage. Wife testified that the debt covered her "household expenses." The district court found that the debt was marital and included it in the property division. Because the record supports the court's determination, we discern no error. *See* § 14-10-113(3); *Jorgenson*, 143 P.3d at 1172; *see also In re Marriage of Capparelli*, 2024 COA 103M, ¶¶ 8, 21-24 (because the husband

10

incurred a line of credit debt for living expenses while the dissolution was pending, it was a marital debt that should have been allocated in the property division).

¶ 22 Still, husband insists that his testimony that he did not receive any benefit from wife's purchases and two exhibits showing that the expenditures were made after the parties separated require a different outcome. But husband cites no authority, and we are not aware of any, requiring that both parties benefit from a debt incurred during the marriage before it can be classified as a marital debt. And reweighing the evidence is not our role. *See Thorburn*, ¶ 49; *Amich*, 192 P.3d at 424; *see also In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in [district] courts to weigh conflicting evidence."); *Collins*, ¶ 21 (appellate court may presume that the district court considered all the evidence admitted).

E.  Overall Property Division

¶ 23 The district court expressly acknowledged both parties' contributions to the marital estate. Even so, the court found that wife, through her "more stable employment and income," "contributed far more to the marriage," including periods where she

11

financially "carried the household" during husband's intermittent unemployment. It determined that the overall property division was equitable, even with wife receiving a slightly larger share.

¶ 24 Husband argues that the overall property division was inequitable because the district court "ignored" or gave insufficient weight to his limited earning capacity, contributions to the marital estate, and history of unemployment. *See* § 14-10-113(1). We decline his invitation to reweigh the statutory factors in his favor and substitute our judgment for that of the district court. *See Smith*, ¶ 64; *Collins*, ¶ 21; *see also In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (When reviewing for an abuse of discretion, even where "there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."). Accordingly, we discern no abuse of discretion in the property division.

V.    Financial Disclosures and Maintenance

¶ 25 Husband contends that the district court erred by denying his maintenance request because, among other things, it improperly denied his motion to compel wife to update her mandatory financial

12

disclosures, which were necessary to determine her monthly gross income accurately.  We agree.

### A.    Mootness

¶ 26    As an initial matter, wife contends that this portion of the appeal should be dismissed as moot because husband remarried in August 2024.  *See In re Marriage of Thomas*, 2021 COA 123, ¶ 21 (an issue is moot when the relief requested, if granted, would have no practical effect on an existing controversy); *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 50 (an appellate court will not render an opinion on the merits of an issue when later events have rendered it moot).  But because the alleged fact is not part of the appellate record, we decline to consider the argument.  *See In re Marriage of McSoud*, 131 P.3d 1208, 1223 (Colo. App. 2006) ("Only facts appearing in the record can be reviewed . . . ."); *see also In re Marriage of Drexler*, 2013 COA 43, ¶ 24 (declining to consider an exhibit appended to a party's brief that was not part of the certified record).  And even assuming husband did remarry as alleged, he could still be entitled to retroactive maintenance until the date of remarriage.

### B. Applicable Law and Standard of Review

¶ 27 C.R.C.P. 16.2(e) imposes an affirmative duty on each spouse in a domestic relations case to "disclose all information that is material . . . without awaiting inquiry from the other [spouse]." C.R.C.P. 16.2(e)(1); *In re Marriage of Hunt*, 2015 COA 58, ¶ 13. C.R.C.P. Form 35.1 specifies the required disclosures, including

- pay stubs, a current income statement, and the final income statement for the prior year; and

- federal income tax returns, including all schedules, W-2s, and 1099s, for the three years preceding the dissolution petition.

¶ 28 Spouses have a continuing duty to promptly supplement or amend these disclosures as governed by C.R.C.P. 26(e). C.R.C.P. 16.2(e)(4). Failure to comply may result in appropriate sanctions, including adverse inferences or other evidentiary sanctions. *See* C.R.C.P. 16.2(e)(5), (j); *Wright*, ¶¶ 25, 28; *Camp Bird Colo., Inc. v. Bd. of Cty. Comm'rs*, 215 P.3d 1277, 1290 (Colo. App. 2009).

¶ 29 We review rulings on motions to compel discovery for an abuse of discretion. *DCP Midstream LP v. Anadarko Petroleum Corp.*, 2013 CO 36, ¶ 24.

14

## C. Discussion

¶ 30 In May 2023, about two months after petitioning for dissolution, wife submitted a sworn financial statement, reporting a monthly gross income of $6,205 as a claims adjuster at USAA, where she had worked since 1998. Over the ensuing months and through two different attorneys, wife filed two certificates of compliance with C.R.C.P. 16.2, indicating that she provided, as relevant here,

- biweekly pay stubs for the periods of January 2023 to March 2023 and September 2023 to December 2023; and
- W-2s and tax returns from 2020 to 2022.

¶ 31 In January 2024, the district court ordered both parties to exchange updated disclosures.

¶ 32 In March, husband's third attorney entered an appearance. A month later, husband filed a motion to compel wife to provide both the mandatory financial disclosures previously given to his former attorneys and the following updated disclosures:

- biweekly pay stubs from June 2023 to the present; and
- a 2023 W-2 and tax return.

¶ 33     In response, wife conceded that she had not provided pay stubs from June 2023 to August 2023 but claimed she had disclosed all other pay stubs for that year.  She added that she was "working on obtaining her new pay stubs and [would] supplement [her disclosures] at the earliest convenience."  Regarding her taxes, she represented that she had not yet received her 2023 W-2 and, as a result, had not filed her tax return.

¶ 34     In a verified reply, husband alleged that a review of his former attorneys' files confirmed that wife's disclosures were still incomplete.  He noted that her response lacked any documentation proving that she had produced the disputed pay stubs or tax information.

¶ 35     On May 27, 2024, four days before the hearing, the district court denied husband's motion to compel.  The court reasoned that wife was not obligated to resend documents already disclosed to his former attorneys, but it did not address his request for updated disclosures.

¶ 36     At the hearing, husband testified that wife failed to update her pay stubs past March 2023 and provide her 2023 tax

documentation. Wife admitted that she could retrieve her pay stubs via the USAA website but chose not to "show" them to husband.

¶ 37 The district court accepted wife's testimony that her income remained largely unchanged since the start of the proceedings. Relying solely on a pay stub from March 2023, which the court described as the "best available evidence," it calculated her monthly gross income to be $7,302 and denied husband's request for maintenance. The court then reiterated its denial of husband's motion to compel, explaining simply that wife's response was more persuasive.

¶ 38 Husband asserts that the district court erred by denying his motion to compel, ultimately leading to an inaccurate income calculation for wife. He maintains that she never produced, among other things, her 2024 pay stubs and 2023 W-2 and tax return.

¶ 39 The district court did not err by declining to compel wife to resend documents previously provided to husband's former attorneys. But, on this record, we conclude that it abused its discretion by failing to enforce wife's obligation to provide updated mandatory financial disclosures. *See DCP Midstream LP*, ¶ 24. Under C.R.C.P. 16.2(e)(1) and (e)(4), and consistent with the court's

January 2024 order, wife had an ongoing duty to supplement her disclosures, even without husband having to ask. Wife presented no evidence to contradict husband's claim that she failed to provide updated disclosures. On the contrary, her own testimony suggested that the current income documentation was not only available but had been withheld.

¶ 40 In declining to compel wife to produce updated disclosures and then relying on year-old information to determine her income, the district court effectively rewarded wife's noncompliance to husband's detriment. *See* C.R.C.P. 16.2(e)(1), (4). That said, we cannot tell the extent of the harm caused by the court's error. Without the missing pay stubs and 2023 tax documents, we cannot determine wife's actual monthly gross income or whether the court might have granted husband's request for maintenance considering more accurate income information.

¶ 41 Consequently, we reverse the district court's order denying husband's motion to compel wife to update her mandatory financial disclosures. We also reverse the court's denial of maintenance, as wife's income was central to that determination. *See* § 14-10-114(3)(a)(I)(A), (C), (3)(a)(II)(A), (B), (3)(c)(I), (II), (V), (VI),

C.R.S. 2025. We remand and instruct the district court to enforce wife's disclosure obligations under C.R.C.P. 16.2, consider whether to impose appropriate sanctions for her noncompliance, redetermine her monthly gross income, and revisit husband's request for maintenance. In doing so, the court must allow the parties to present new evidence of their current financial circumstances. *See Wright*, ¶ 24; *In re Marriage of Stradtmann*, 2021 COA 145, ¶ 35.

¶ 42 Given our disposition, we decline to address husband's remaining arguments that the district court inappropriately excluded certain income sources from wife's monthly gross income.

## VI. Attorney Fees in the District Court

¶ 43 To the extent wife seeks an order requiring husband to pay attorney fees she incurred during the dissolution proceedings, we deny the request. Our appellate jurisdiction is limited to reviewing final judgments or orders, and wife does not point us to any part of the record reflecting that she made that request of the district court. *See* C.A.R. 1(a)(1); § 13-4-102(1), C.R.S. 2025; *Evans*, ¶ 11; *see also In re Org. of N. Chaffee Cty. Fire Prot. Dist.*, 544 P.2d 637,

638 (Colo. 1975) ("The purpose of an appellate court is to [r]eview judgments, not to make them . . . .").

## VII. Appellate Attorney Fees and Costs

¶ 44 Husband asks for his appellate attorney fees under section 14-10-119, C.R.S. 2025, based on the disparity in the parties' financial resources. *See In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006) ("Section 14-10-119 empowers the [district] court to equitably apportion costs and fees between parties based on relative ability to pay."). Because the district court is better situated than we are to determine the factual issues regarding the parties' current financial resources, we remand for the district court to consider his request. *See* C.A.R. 39.1; *Gutfreund*, 148 P.3d at 141; *In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

¶ 45 Husband also requests attorney fees under section 13-17-102, C.R.S. 2025, for having to appeal the district court's "plain errors." But he does not develop any argument for why he is entitled to such fees. *See* C.A.R. 39.1 ("If attorney fees are recoverable for the appeal, the principal brief of the party claiming attorney fees must include a specific request, and explain the legal and factual basis, for an award of attorney fees."); *cf. Cikraji v. Snowberger*, 2015 COA

66, ¶ 21 n.3 ("We do not consider bald factual or legal assertions presented without argument or development.").  Thus, we deny his request.

¶ 46     Husband also seeks his appellate costs.  Because we affirm in part and reverse in part, we remand to the district court to determine appellate costs.  *See* C.A.R. 39(a)(4) ("[I]f a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as ordered by the [district] court.").

## VIII.  Disposition

¶ 47     The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

JUDGE DUNN and JUDGE SCHOCK concur.