**In re the MARRIAGE OF Ronald W. PAGE, Appellee and Cross Appellant,**

and

**Debra L. Page, Appellant and Cross Appellee.**

No. 00CA1757.

Colorado Court of Appeals, Div. IV.

Feb. 27, 2003.

Certiorari Denied May 27, 2003.

J. Terry Wiggins, Denver, Colorado, for Appellee and Cross–Appellant.

Marc J. Kaplan, Denver, Colorado, for Appellant and Cross–Appellee.

Opinion by Judge DAILEY.

In this dissolution of marriage proceeding, Debra L. Page (wife) appeals from the property division, maintenance determination, and denial of her request for attorney fees entered as part of the trial court's permanent orders. Ronald W. Page (husband) cross-appeals from the trial court's determination that wife met the statutory threshold for maintenance. We affirm.

## I.

■ Wife first contends that the trial court erred in denying her motion to disqualify husband's expert. We disagree.

Husband's expert, a certified public accountant, was retained to value stock that represented husband's business interest and was the primary asset of the marital estate. The expert testified regarding the valuation at the permanent orders hearing.

Wife claimed that the expert should have been disqualified for a conflict of interest because she or her attorneys had twice interviewed members of the expert's firm (on one occasion, the expert himself) about evaluating the stock for her and finding husband's potential hidden assets. Although she acknowledged that she did not retain the firm, she argued that she had established a confidential relationship with the firm and its members and, along with her counsel, had shared privileged information with them. The trial court denied her motion to disqualify, finding that wife had failed to show that she had entered into a confidential relationship with the expert's firm.

■ "Courts are generally reluctant to disqualify expert witnesses," *W.R. Grace & Co. v. Gracecare, Inc.*, 152 F.R.D. 61, 65 (D.Md.1993), because of the need to ensure that (1) parties have access to expert witnesses who possess specialized knowledge; and (2) experts are allowed to pursue their professional callings. *See English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F.Supp. 1498, 1504–05 (D.Colo.1993)(noting that if experts are too easily subjected to disqualification, attorneys and clients could attempt to create inexpensive relationships with potentially harmful experts to keep them from the opposing party).

■ Consequently, conflict of interest issues involving nonattorney experts are analyzed under a two-part test, and both parts must be answered in the affirmative to disqualify an expert: (1) whether it was objectively reasonable for the party to conclude that a confidential relationship existed with an expert consultant; and (2) whether any confidential or privileged information was disclosed by that party to the expert consultant. *Mitchell v. Wilmore*, 981 P.2d 172, 175 (Colo.1999); *see Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C.1991)("[D]isqualification ordinarily should not occur when confidential relationship existed but no privileged information was communicated, or, alternatively where no confidential relationship existed but privileged information was nonetheless disclosed.").

■ A confidential relationship may be established under certain circumstances when one party has reposed special trust or justifiable confidence in another party who invites, accepts, or undertakes that confidence. *Crystal Homes, Inc. v. Radetsky*, 895 P.2d 1179, 1182 (Colo.App.1995). Specifically, a confidential relationship may arise if: (1) one party has taken steps to induce another to believe that it can safely rely on the first party's judgment or advice; (2) one party has gained the confidence of the other and purports to act or advise with the other's interest in mind; or (3) the parties' relationship is such that one is induced to relax the care and vigilance that ordinarily would be exercised in dealing with a stranger. *First Nat'l Bank v. Theos*, 794 P.2d 1055, 1061 (Colo.App.1990).

■■ On appeal, we review a trial court's ruling regarding the disqualification of an expert for an abuse of discretion. *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir.1996). A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner. *See People v. Palomo*, 31 P.3d 879, 882

(Colo.2001)(orders disqualifying district attorneys from prosecuting cases).

In its ruling, the court stated that a confidential relationship could be established, even if as here, the expert had not been formally retained. However, the court noted that a confidential relationship could not be formed unilaterally, but rather required the invitation or acceptance of the other party. The trial court, therefore, determined that whether or not wife and her attorneys reasonably concluded that they had a confidential relationship with the accountants and their firm, the accountants also were required to have, in some fashion, encouraged such conclusion. The court found, however, that the interviews were merely exploratory and remained tentative regarding whether the relationship would proceed.

The record amply supports the court's determination that the interviews were merely exploratory and involved an assessment as to whether the accounting firm would be able to make the evaluations and investigation necessary to trace husband's assets and determine their values. Specifically, wife and her counsel wanted to know whether the firm would be able to prove the existence of assets husband had allegedly failed to disclose and how a valuation of his business interest would account for the fact that he held only a minority share although he had, according to wife, an instrumental role in both the creation and management of the business. While, as the trial court found, privileged information in the form of attorney work product regarding a general approach to the case may have been discussed, the record reflects that no confidential document was provided by wife for review by the expert's firm, and the expert's firm did no work for, and offered no opinions to, wife and was not paid any money by wife.

Under the circumstances, we conclude that the trial court did not abuse its discretion in determining that wife did not have an objectively reasonable belief in the existence of a confidential relationship with the expert's firm. *See, e.g., Mayer v. Dell, supra,* 139 F.R.D. at 3 (refusing to disqualify expert where party's contact with expert "was no more than a consultation to permit [party and expert] to determine whether [expert] might later be retained"); *Nikkal Indus. Ltd. v. Salton, Inc.,* 689 F.Supp. 187, 190 (S.D.N.Y.1988)(refusing to disqualify expert where party's meeting with expert "amounted to no more than 'a comprehensive employment interview' " and party "never in fact utilized [expert's] services").

Because wife failed to prove the first prong of the conflict of interest test, further examination of the type of information shared is unnecessary.

## II.

Wife next contends that the trial court failed to value and distribute several assets. We disagree.

The assets wife claims the trial court overlooked were the parties' football tickets, baseball tickets, and frequent flyer miles. However, because the trial court had no evidence before it concerning the classification or value of these assets, its failure to include them in the property division does not constitute error. *See In re Marriage of Sharp,* 823 P.2d 1387, 1389 (Colo.App.1991)(where there was no evidence presented concerning marital appreciation, the trial court committed no error in failing to address that claimed asset); *In re Marriage of Hulse,* 727 P.2d 876, 877–78 (Colo.App.1986)(trial court did not err in failing to determine extent of the appreciation in the marital residence where there was no competent evidence as to that value).

## III.

Wife next contends that the trial court erred in its valuation of the closely held stock owned by husband in his business because it was not supported by any findings, analysis, or evidence. Again, we disagree.

In dividing the marital estate, specific findings as to the value of each asset are not required if the basis for the trial court's decision is apparent from its findings. *In re Marriage of Hulse, supra,* 727 P.2d at 878. The trial court also has discretion to choose the property valuation of one party over that of the other or to make its own reasonable determination of value, and such determina-

tion will be upheld unless clearly erroneous. *In re Marriage of Nordahl,* 834 P.2d 838, 842 (Colo.App.1992).

■ Here, the trial court valued husband's business stock at $1,450,000 and awarded one-half of the stock to each party for an allocation worth $725,000. Wife's expert valued the stock in a range between a minimum of $3,500,000 and $5,200,000, which would result to her in a maximum allocation worth approximately $2,600,000. In contrast, husband's expert testified that he would apply a minority discount to the minimum valuation of wife's expert by 35% bringing it to $2,210,000. Husband's expert also testified that he valued the company using four different methods, which yielded a range of value for husband's stock from $524,605 to $2,739,510. One of those methods, the capitalized earning method applied to the company's financial statements for 1999, yielded a value of $1.4–1.5 million for husband's minority interest. In addition, husband's expert testified that the average for all the various valuations was $1,481,000.

Thus, the record amply supports the trial court's valuation of husband's stock. *See In re Marriage of Huff,* 834 P.2d 244, 255 (Colo.1992)(valuation of law practice was a question of fact to be resolved by the trial court as fact finder, and its valuation could not be disturbed unless it was clearly erroneous and not supported by the record). Moreover, the value adopted demonstrates that the trial court credited husband's expert and his valuation methods over the opinion of wife's expert. Consequently, additional findings by the trial court to support the valuation adopted were not necessary.

IV.

Wife next challenges the maintenance award, arguing that it is not supported by sufficient findings and that the amount awarded is inadequate to enable her to meet her expenses without depleting the assets she received in the property division. In his cross-appeal, husband contends that the trial court erred in finding wife eligible for maintenance. We disagree with the assertions raised by both parties.

■ Before maintenance may be awarded following the dissolution of the marriage, the court must make a threshold determination that the spouse requesting it lacks sufficient property, including marital property, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment. Section 14–10–114(3), C.R.S.2002; *In re Marriage of Renier,* 854 P.2d 1382, 1385 (Colo.App.1993). The phrases "reasonable needs" and "appropriate employment" have been liberally construed. Thus, determination of a spouse's reasonable needs is dependent on the particular facts and circumstances of the marriage, while appropriate employment hinges upon the parties' reasonable expectations established during the marriage. *In re Marriage of Bartolo,* 971 P.2d 699, 701 (Colo.App.1998).

Once the statutory threshold has been met, the amount and duration of maintenance are to be determined based upon the criteria set forth in § 14–10–114(4), C.R.S.2002. *See In re Marriage of Fisher,* 931 P.2d 558, 558–59 (Colo.App.1996) (analyzing maintenance determination under prior version of the statute). Those factors include the parties' financial resources; the recipient's need for education or training; the standard of living established during the marriage; the age and condition, both physical and emotional, of the recipient; and the payor spouse's ability to meet his or her needs while meeting those of the recipient. *See In re Marriage of Huff, supra,* 834 P.2d at 252–53.

■ A trial court's award of maintenance will not be reversed absent an abuse of discretion. *In re Marriage of Bartolo, supra,* 971 P.2d at 701.

■ Here, the trial court expressly relied upon the threshold standard in finding wife eligible for maintenance and referred generally to the statutory section that lists the factors to be considered in determining the amount and duration of the maintenance award. Further, the court specifically observed that the marriage was of a long duration and that the parties earned significantly disparate incomes. The court also found that wife's psychological problems, as demonstrated in the courtroom and by the evidence,

restricted her ability to practice effectively as a psychologist. The record supports the trial court's conclusions concerning wife's emotional state and the impediment it presents regarding her potential to generate adequate support for herself. Not only is husband's contention that wife was earning the average income of a psychologist not supported by the evidence in light of the costs of supervision she must pay, but her earnings alone would have been insufficient, in any case, to provide a standard of living remotely approximating the marital lifestyle. Thus, contrary to husband's claim, the evidence is sufficient to establish wife's eligibility for maintenance.

We also are unpersuaded that the court erred in failing to enter specific findings concerning wife's reasonable needs, which she averred were over $17,000 per month. Wife's testimony showed that she was unable to corroborate many of the particular expenses claimed. Further, many of the items appear on their face to be generous amounts for one person.

 The court's award of $3000 per month reflects its implicit determination that wife's reasonable needs were substantially less and could be met with the amount of maintenance awarded combined with the investment earnings from the significant resources allocated to her in the property division. Because the evidence presented was more than sufficient to support the amount awarded based upon the totality of the circumstances, we may not overturn the court's determinations in that regard. *See In re Marriage of Lee*, 781 P.2d 102, 105 (Colo. App.1989)(a court awarding maintenance need not make explicit findings that the wife has insufficient property to meet her reasonable needs or is unable to support herself through appropriate employment, and when the award is supported by the record, it is binding on appeal).

### V.

Finally, we disagree that the trial court erred in denying wife's request for attorney fees.

The purpose of an award of attorney fees under § 14-10-119, C.R.S.2002, is to apportion equitably the costs of the dissolution based on the current resources of the parties in order to equalize their status and to ensure that neither party suffers undue economic hardship as a result of the proceedings. *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo.1997).

Here, in view of the redundancies in work done by wife's three attorneys, the substantial share of property awarded to wife, her earnings as a psychologist, and the maintenance awarded to her, we do not find the denial of her request for attorney fees to be an abuse of discretion.

The judgment is affirmed.

Judge VOGT and Judge CRISWELL * concur.