24CA2115 Marriage of Harley 01-22-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2115
El Paso County District Court No. 23DR2152
Honorable Chad Miller, Judge

In re the Marriage of

Darryl Tyrone Harley,

Appellant,

and

Michelle Annette Harley,

Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE GOMEZ
Pawar and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

Law Office of Joel M. Pratt, Joel M. Pratt, Colorado Springs, Colorado, for Appellant

Michelle Annette Harley, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this dissolution of marriage case between Darryl Tyrone Harley (husband) and Michelle Annette Harley (wife), husband appeals the portion of the district court's permanent orders concerning maintenance.  We affirm the judgment.

## I.    Relevant Facts

¶ 2    The parties had been married over seven years when husband petitioned to dissolve their marriage.  Both parties represented themselves during the case.

¶ 3    Wife filed a motion to compel husband to produce certain mandatory disclosures under C.R.C.P. 16.2, including income documentation and business financial statements, and the district court granted her motion.

¶ 4    Later, the court held a permanent orders hearing and then dissolved the parties' marriage.  During the hearing, wife testified that she never received husband's income documentation from multiple sources, including the business he owned.  As a part of its permanent orders, the court drew a negative inference about husband's income based on his failure to disclose financial information from his business and then awarded wife maintenance.

## II. Maintenance

¶ 5　　Husband challenges the sufficiency of the district court's findings regarding his income and its determination to award wife maintenance. We reject both challenges.

### A. Preservation

¶ 6　　To begin, we reject wife's argument that we shouldn't consider husband's challenges because he didn't object to the maintenance award in the district court. While we generally won't address an argument raised for the first time on appeal, *see In re Marriage of Mack*, 2022 CO 17, ¶ 12, "a party is not required to object to the [district] court's findings . . . to preserve a challenge to those findings," *People in Interest of D.B.*, 2017 COA 139, ¶ 30. *See* C.R.C.P. 52 ("Neither requests for findings nor objections to findings rendered are necessary for purposes of review.").

### B. Standard of Review

¶ 7　　A district court has broad discretion to determine the award of maintenance, if any, that is fair and equitable to both spouses based on the totality of the circumstances. *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 14; § 14-10-114(3)(e), C.R.S. 2025. Absent an abuse of that discretion, we will not disturb the court's

award.  *See In re Marriage of Medeiros*, 2023 COA 42M, ¶ 58.  A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misapplies the law. *In re Marriage of Herold*, 2021 COA 16, ¶ 5.  However, we review de novo whether the court correctly applied the law.  *Medeiros*, ¶ 58.

### C.    Relevant Law

¶ 8    Section 14-10-114(3) sets forth the process a court must follow when considering a maintenance request.  *In re Marriage of Wright*, 2020 COA 11, ¶ 13.

¶ 9    The court must first make findings on the amount of each party's gross income, the marital property apportioned to each party, each party's financial resources, the parties' reasonable financial need as established during the marriage, and the taxability and tax deductibility of any maintenance payments. § 14-10-114(3)(a)(I); *Herold*, ¶ 25.

¶ 10    The court then must determine an amount and term of maintenance, if any, that is fair and equitable by considering the statutory advisory guidelines and a list of nonexclusive statutory factors.  § 14-10-114(3)(a)(II)(A)-(B), (3)(b), (3)(c); *Wright*, ¶ 15. Those factors include the financial resources of the recipient and

payor spouse; the lifestyle during the marriage; the distribution of marital property; both parties' income, employment, and employability; the duration of the marriage; and any other relevant factor. § 14-10-114(3)(c)(I)-(V), (VII), (XIII). The court isn't required to make specific factual findings about each factor, so long as its decision gives the reviewing court a clear understanding of the basis of its order. *Wright,* ¶ 20.

¶ 11     Finally, the court must determine whether the requesting spouse qualifies for maintenance, meaning that the spouse lacks sufficient property, including awarded marital property, to provide for their reasonable needs and is unable to support themself through appropriate employment. *See* § 14-10-114(3)(a)(II)(C), (3)(d); *Wright,* ¶ 16.

### D.   Discussion

#### 1.   Husband's Income

¶ 12     Husband contends that the district court performed an "insufficient analysis" to justify its finding about his income after drawing the negative inference against him. We are not persuaded.

### a. Procedural Background

¶ 13 The record shows that wife experienced difficulty in obtaining personal and business financial information from husband. After wife filed the motion to compel, the court ordered the parties to exchange mandatory disclosures as required under C.R.C.P. 16.2 and C.R.C.P. Form 35.1. *See* C.R.C.P. 16.2(e)(1) (imposing an affirmative duty on spouses in domestic relations cases to "disclose all information that is material to the resolution of the case without awaiting inquiry from the other [spouse]"); C.R.C.P. Form 35.1 (outlining mandatory disclosures, including personal and business federal income tax returns for three years preceding the dissolution petition; personal and business financial statements for the last three years; and income documentation, such as pay stubs, for the current and prior year). The court also advised that a party's failure to comply with their disclosure obligations may result in sanctions, including "the drawing of a negative inference." *See* C.R.C.P. 16.2(e)(5), (j); *Wright,* ¶ 27 (a district court has considerable discretion to impose appropriate sanctions if a party fails to comply with C.R.C.P. 16.2's provisions). Then, several

months before the permanent orders hearing, the court granted wife's motion to compel.

¶ 14    At a pretrial conference where only wife appeared, she indicated that husband still hadn't provided the required disclosures and that his failure to do so was impeding her ability to provide the court with accurate financial information. She also asked the court to draw a negative inference against husband due to his lack of disclosures. The court didn't rule at that time but said it could consider the issue at the permanent orders hearing.

¶ 15    Wife then testified at the permanent orders hearing that husband had withheld several financial and business documents from her. For example, wife said she hadn't received documentation of husband's income from the following sources: All Stars Floor Care, the business he owned; his new job as a production manager at Voda Restoration; his previous job at CC Restoration; and DoorDash. Wife also said she hadn't received business tax returns from husband.

¶ 16    However, wife testified about a sworn financial statement husband had submitted two years earlier in the parties' previous dissolution case. In that earlier sworn statement, husband had

claimed a monthly income of $12,365 — considerably higher than the roughly $6,200 monthly income he was claiming at the permanent orders hearing.

¶ 17 Based on husband's nondisclosure of his business financial information, the court inferred that he continued "to earn substantial income through his business that was not disclosed." *See In re Marriage of Sgarlatti*, 801 P.2d 18, 19 (Colo. App. 1990) (the district court, as factfinder, could draw the inference that a party's refusal to make a willing disclosure of his financial status meant he was concealing income). The court noted that its "big question" was "what to use as [husband's] income," stating that its information about the parties' finances was limited "largely because [husband had] not provided information to this Court . . . despite Court Orders." But, based on his earlier sworn financial statement, the court found that husband earned $12,365 per month.

### b. Analysis

¶ 18 Considering this record, we are not persuaded that the court abused its discretion by imputing husband's income based on the figure from his previous financial disclosure, given the limited evidence available to it. *See id.*; *see also In re Marriage of Yates*,

148 P.3d 304, 311 (Colo. App. 2006) (upholding an order imputing income based on the only evidence available when the party's financial disclosures were "atrocious"). Husband doesn't persuade us otherwise by emphasizing that he filed other sworn financial statements in this case that nearly matched the lower income he asserted at permanent orders. By inferring that husband was concealing additional income, the district court effectively did not credit the lower income that he claimed at permanent orders and that he now points to on appeal. And "any inferences and conclusions to be drawn from the conflicting evidence were for the district court to resolve." *In re Marriage of Tooker*, 2019 COA 83, ¶ 31; *see also In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) ("The [district] court can believe all, part, or none of a witness's testimony, . . . and its resolution of conflicting evidence is binding on review.").[1]

---

[1] We decline to consider husband's argument, made for the first time in his reply brief, that the court lacked statutory authority to impute his income because it didn't find that he was voluntarily unemployed or underemployed. *See In re Marriage of Dean*, 2017 COA 51, ¶ 31 (we don't consider arguments made for the first time in a reply brief).

## 2. Maintenance Analysis

¶ 19 Husband also contends that the district court failed to sufficiently analyze the section 14-10-114(3)(c) factors. Again, we are not persuaded.

¶ 20 The district court made the following findings:

- Wife worked full-time at an airline for a salary of $3,579 per month. *See* § 14-10-114(3)(a)(I)(A), (a)(I)(C), (c)(I), (c)(V).

- Based on the negative inference, husband's income was $12,365. *See* § 14-10-114(3)(a)(I)(A), (a)(I)(C), (c)(II), (c)(V).

- There was very little marital property, but there were debts apportioned to the parties. *See* § 14-10-114(3)(a)(I)(B), (c)(IV).

- "Husband is able to pay rent, tithe significant amounts of money and continues, presumably, and through the Court's negative inference, to earn substantial income through his business that was not disclosed." *See* § 14-10-114(3)(a)(I)(A), (a)(I)(C), (c)(II).

- Wife, meanwhile, had "nothing left," was "working what she can to overcome, essentially, the homelessness that she was left with," and couldn't continue "any semblance of the

9

financial situation" the parties "utilized during the marriage." *See* § 14-10-114(3)(a)(I)(C), (a)(I)(D), (c)(I), (c)(III).

- Husband "essentially, used up all of [wife's] funds and then divorced" her, and "all" the property wife entered the marriage with had been "depleted." *See* § 14-10-114(3)(a)(I)(C), (c)(I).

- The maintenance award wasn't taxable or tax deductible. *See* § 14-10-114(3)(a)(I)(E), (c)(XII).

- The length of the marriage was eight years and five months. *See* § 14-10-114(3)(c)(VII).

- The advisory guideline amount and term of maintenance was $2,242 per month for three years and six months. *See* § 14-10-114(3)(a)(II)(A).

¶ 21    Based on its findings, the court determined that wife qualified for maintenance and ordered that she receive maintenance consistent with the advisory guidelines. *See* § 14-10-114(3)(d).

¶ 22    Although the record shows that the court had limited financial information before it, its ruling "demonstrate[s] consideration" of the section 14-10-114(3)(c) factors. *Wright*, ¶ 19. Indeed, the court made findings about the parties' respective incomes and financial resources, the marital property or lack thereof, the duration of the

10

marriage, and the taxability of the maintenance award. *See* § 14-10-114(3)(c)(I)-(II), (IV)-(V), (VII), (XII). Contrary to husband's suggestion, its findings are sufficiently explicit such that we have a clear understanding of the basis of its award. *See Wright*, ¶ 20.

¶ 23    And the record supports the court's findings. For instance, wife testified that she had "lost everything that [she had] worked hard for," that husband hadn't "paid anything throughout the marriage," and that she earned $20.65 per hour on a five-year contract with no opportunity for a pay increase. We will not disturb the court's maintenance determination when, as here, it has record support. *See In re Marriage of Atencio*, 47 P.3d 718, 722 (Colo. App. 2002); *see also In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (an appellate court will not substitute its judgment for that of the district court even if evidence in the record could have supported a different result regarding maintenance).

¶ 24    Husband also asserts that the court failed to analyze either party's "reasonable expenses." But the court considered the parties' financial resources. *See* § 14-10-114(3)(c)(I)-(II) (factors concerning the spouses' financial resources include the recipient's ability to meet their needs independently and the payor's ability to meet their

reasonable needs while paying maintenance). The court found that wife couldn't continue "any semblance of the financial situation" the parties had utilized during the marriage. It also inferred that husband continued to "earn substantial income," found that he was able to pay his rent and tithe significant amounts of money, and determined that he "[had] an ability to pay" maintenance. As the court's ruling sufficiently established the basis for its determination, *see Wright*, ¶ 20, it didn't have to make further findings on the financial resources factors. And, in any event, the court didn't have to make a specific calculation of the parties' reasonable expenses. *See* § 14-10-114(3); *In re Marriage of Page*, 70 P.3d 579, 584 (Colo. App. 2003).

¶ 25    Husband lastly asserts that the court didn't explain why the advisory guideline amount it awarded was appropriate. But the court did determine, based on its supported findings, that wife had a need for maintenance and that the advisory guideline amount was appropriate. Notably, the court also recognized that it was "not bound by the guideline amounts." *See* § 14-10-114(3)(e). In light of its ruling, the court wasn't required to make further findings. *See Wright*, ¶ 20.

¶ 26    In sum, we have a clear understanding of the basis of the court's ruling, *see id.*, and conclude that it did not misapply the law or abuse its discretion in awarding maintenance.  *See Medeiros*, ¶ 58; *Herold*, ¶ 5.

## III.    Disposition

¶ 27    The judgment is affirmed.

JUDGE PAWAR and JUSTICE MARTINEZ concur.