25CA0571 Marriage of Larock 04-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0571
Arapahoe County District Court No. 23DR811
Honorable Christopher Boeckx, Magistrate

In re the Marriage of

Perry Gates Larock,

Appellant,

and

Terra Nicole Larock,

Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Kuhn and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

Maha Kamal, Denver, Colorado, for Appellant

Ciancio Ciancio Brown, P.C., Alexandra U. Goldstein, Denver, Colorado, for
Appellee

¶ 1    The district court dissolved the marriage of Perry Gates Larock (Husband) and Terra Nicole Larock (Wife) and entered permanent orders dividing marital property, allocating parental responsibilities, determining spousal maintenance and child support, and denying Husband's request for attorney fees.  Husband appeals several aspects of the order.  We affirm the judgment but remand the case so the district court may correct a typographical error.

I.    Background

¶ 2    The parties were married in June 2014 in Lyons, Colorado. During the marriage they had two kids, acquired two homes, and started a business.  The parties jointly filed for divorce in June 2023 and consented to the jurisdiction of a magistrate.  Husband, Wife, and three experts testified at a full-day hearing, and the court issued its permanent orders on February 11, 2025.

¶ 3    On appeal, Husband challenges several aspects of the permanent orders.  He argues that the court erred by (1) misvaluing the marital home awarded to him (Lincoln Residence); (2) failing to include a marital balance sheet detailing its division of assets; (3) allowing Wife two years to refinance the marital home awarded to her (Grant Residence); (4) incorrectly imputing Wife's income,

resulting in the denial of his request for spousal maintenance and child support; (5) ordering a lump sum division of Wife's stock in her business; and (6) denying his request for attorney fees. While we agree that the court made a typographical error in valuing the Lincoln Residence, we otherwise affirm.

## II. Valuation of the Lincoln Residence

¶ 4 After the parties separated in 2022, Husband lived at the Lincoln Residence — one of two marital homes. The parties stipulated in their "Joint Trial Management Certificate" (JTMC) that the property "has an approximate fair market value (net equity) of $357k." Despite this, the district court adopted a $375,000 valuation when awarding the property to Husband.

¶ 5 The court provided no reason for the $18,000 discrepancy, and Husband argues it resulted in an inequitable distribution of marital assets. Wife believes the court made a typographical error. In support of both parties' positions, Wife points to the district court's statement that it "accepts the parties' stipulation, set forth on page 2 of the JTMC, that the net equity in the Lincoln Residence is $375,000." We agree that the error is clerical and remand the case so the district court may correct the permanent orders to

reflect the stipulated valuation.  *See In re Marriage of Burford*, 26 P.3d 550, 555, 560 (Colo. App. 2001) (the appropriate remedy for a clerical error is correction on remand).  However, because the $18,000 discrepancy comprises only 2.3% of the marital estate, we disagree that Husband was prejudiced by the error or that this error requires reversal.[1]  *See In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001) (an error affecting a small percentage of the marital estate is harmless and does not require reversal); *In re Marriage of Zappanti*, 80 P.3d 889, 893 (Colo. App. 2003) (same).

### III.  Division of Marital Property

### A.  Additional Background

¶ 6      In its permanent orders, the district court divided all marital property.  The court described each asset, provided a numerical value when appropriate, and awarded it to Husband or Wife.  The court cited its duty to divide marital property in a just fashion pursuant to section 14-10-113(1), C.R.S. 2025, and explained its reasoning behind its conscientious divisions.  Ultimately, the court

---

[1] For the same reason, to the extent Husband asks us to consider this discrepancy in our review of other issues presented on appeal, we decline to do so.

3

found that the "marital property apportioned to each party is roughly equal in this case."

¶ 7    Husband argues on appeal that the district court erred by failing to include a "marital balance sheet" in its permanent orders. Without citing law to support his position, Husband contends that this omission deprived him of an equitable share of assets, leaves the parties to "guess[] as to the ultimate division," and prevents this court "from conducting meaningful appellate review." We disagree.

## B.    Standard of Review

¶ 8    The district court enjoys "great latitude to effect an equitable distribution [of marital property] based upon the facts and circumstances of each case." *Balanson*, 25 P.3d at 35. Thus, absent a clear abuse of discretion, we will not disturb the district court's findings. *Id.* A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies or misconstrues the law. *In re Marriage of Kann*, 2017 COA 94, ¶ 56. An abuse of discretion amounts to reversible error "only where the substantial rights of the parties are affected by the trial court's error when viewed in relation to its overall property division." *Balanson*, 25 P.3d at 36.

### C. Applicable Law and Analysis

¶ 9 In marriage dissolution proceedings, section 14-10-113(1) requires the district court to divide marital property in a just manner. The distribution must be equitable, but it need not be equal. *Burford*, 26 P.3d at 556. "The key to an equitable distribution is fairness, not mathematical precision," and the district court considers several factors in a totality-of-the-circumstances analysis. *In re Marriage of Hunt*, 909 P.2d 525, 537-38 (Colo. 1995) (alterations omitted) (citation omitted). Allocation of the parties' marital debt is likewise part of the property division, and the trial court should take care to ensure that marital liabilities are also assigned equitably. *In re Marriage of Speirs*, 956 P.2d 622, 623 (Colo. App. 1997).

¶ 10 Here, the district court adequately described each asset or liability and awarded it to Husband or Wife. Our review of the permanent orders reveals that the court provided reasons for awarding property to one party or the other and arrived at numerical values based on the parties' stipulations or evidence presented at the hearing. From this, it is apparent that the allocation of marital property was equitable and supported by

sufficient evidence. *See In re Marriage of Smith*, 2024 COA 95, ¶ 71 (A "court is not required to make specific findings as to each statutory factor; its findings need only be sufficient to allow [the appellate court] to determine whether its allocation of the marital estate is supported by competent evidence.").

¶ 11    Husband cites no case law, and we are aware of none, holding that a district court's failure to include a marital balance sheet renders the permanent orders inadequate. Rather, "[i]n dividing the marital estate, specific findings as to the value of each asset are not required if the basis for the trial court's decision is apparent from its findings." *In re Marriage of Page*, 70 P.3d 579, 582 (Colo. App. 2003). Thus, we will not disturb the district court's allocation of assets. *See Hunt*, ¶ 20 (trial courts are best situated to render distribution in divorce proceedings, and absent an abuse of discretion, an appellate court must not disturb the delicate balance it achieved).

## IV.    Refinancing the Grant Residence

### A.    Additional Background

¶ 12    The district court awarded the Grant Residence — one of two marital homes — to Wife. The property, valued at $415,000,

remained titled and financed in both parties' names. Husband desired removal from the mortgage, but Wife could not qualify for refinancing at the time of the hearing because her "debt-to-income ratio" was too high. The court therefore ordered the following:

> Wife shall assume or refinance the mortgage for the Grant Residence within two years from the date of this Order. If Wife fails to do so, then the Grant Residence shall be sold with Wife to be solely responsible for all costs of bringing the Grant Residence to market . . . . Once Husband's name has been removed from the mortgage for the Grant Residence, Husband shall execute a deed to remove his name from the title for that residence within 14 days.

The court further explained that this arrangement allowed the parties to remain in their respective homes and ensured minimal disruption for their children, who had been spending time at both residences.

¶ 13    Husband contends that by allowing Wife two years to refinance, the court violated "fundamental principles of marital dissolution by maintaining Husband's liability on the mortgage for an extended period of time." Husband argues that Colorado law favors complete financial disentanglement between spouses and that the court undermined this by placing him in a situation that

may lead to future litigation. Wife counters that there are circumstances when a continued economic relationship is necessary, and in any event, the arrangement at issue here is definite. We discern no error.

## B. Standard of Review

¶ 14 We review the district court's decision for an abuse of discretion, applying the same principles outlined *supra* Part III.B.

## C. Applicable Law and Analysis

¶ 15 Public policy "discourag[es] continued litigation and ongoing financial interaction between divorced spouses." *In re Marriage of Paul*, 821 P.2d 925, 927 (Colo. App. 1991). Accordingly, "a division of marital property should leave to each party a definable or ascertainable portion of at least some of the attributes of ownership." *Id.* While the goal is to provide a sense of finality, there are circumstances when a continued financial relationship is necessary to achieve an equitable distribution of property. *See* § 14-10-113(1)(c); *see also Hunt*, 909 P.2d at 540 (acknowledging certain circumstances do not warrant immediate distribution). When this situation arises, courts should take care to ensure that the arrangement disentangles the parties at a finite point in time.

*Hunt,* 909 P.2d at 540 (citing *Shill v. Shill,* 765 P.2d 140, 145 (Idaho 1988)).

¶ 16 While we agree with Husband that two years is a considerable amount of time, the arrangement is not indefinite. The order requires Wife to sell the Grant Residence if she cannot refinance within the specified period. *Cf. Paul,* 821 P.2d at 927 (holding that the trial court erred by failing to impose limitations on the time and manner of payment of husband's interest in wife's company, nor any restrictions on wife's control of the asset). The alternative — removing Husband's name via immediate sale of the Grant Residence — would have left Wife without a home while Husband remained in the Lincoln Residence, a grossly inequitable distribution of marital property. *See* § 14-10-113(1).

¶ 17 Additionally, the court was faced with Wife's inability to refinance at the time of the hearing, Husband's desire to remove his name from the mortgage, the well-being of the parties' two minor children, and the fact that the parties were already living separately in their respective homes. Considering the competing interests at play and the clear parameters the district court outlined when

distributing this asset, the court did not abuse its discretion by allowing a two-year refinancing period. *See Paul*, 821 P.2d at 927.

## V. Income, Spousal Maintenance, and Child Support

### A. Additional Background

¶ 18 When the parties married, Wife worked as a school psychologist and Husband as a data analyst. During their marriage, Wife founded a tech company called Mindful Mamas. Husband assisted Wife in starting the company and then worked for Mindful Mamas as an accountant and administrative assistant. In April 2024, after the parties filed for divorce, Wife terminated Husband's position with Mindful Mamas but continued to pay him $1,000 per month as part of his severance package. After his termination, Husband began driving for rideshare companies and assisting a friend with home remodeling. Based on expert testimony, the district court found Husband's potential income to be $75,000 for spousal maintenance and child support purposes.

¶ 19 Due to financial hardship, Wife decided to wind down Mindful Mamas, and the company entered dissolution proceedings in December 2024. As the CEO, Wife earned $175,000 annually. However, because of the pending dissolution and the fact that she

allegedly would not receive a Mindful Mamas paycheck after January 2025, the court determined that Wife's actual income was $0. To calculate spousal maintenance and child support, Wife proposed that the court impute her income at the minimum wage or at the $75,000 salary she earned as a school psychologist. Based upon Wife's testimony that she did not plan to operate another business in the future and would likely return to her prior job, the court imputed a $75,000 salary. The court then relied on these imputations when declining Husband's request for spousal maintenance and child support.

¶ 20 Husband argues that the imputation of Wife's potential income is erroneous and should instead be $175,000, the salary she earned as the CEO of Mindful Mamas at the time of the hearing. Husband contends that the income imputation led to a cascade of errors, including the district court denying his spousal maintenance and child support requests. We are not persuaded.

## B. Standard of Review

¶ 21 Income imputation is a question of fact, and the trial court's findings regarding potential income are entitled to deference if adequately supported by the record. *In re Marriage of Yates*, 148

P.3d 304, 311 (Colo. App. 2006).  We review maintenance and child support orders for an abuse of discretion because "the issue of the [parties'] financial resources is factual," but we review de novo whether the trial court applied the correct legal standard to its factual findings.  *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011); *see also In re Marriage of Wells*, 252 P.3d 1212, 1213 (Colo. App. 2011) (child support); *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28 (maintenance).

C.    Applicable Law and Analysis

¶ 22    Trial courts generally determine child support and maintenance based on the parties' gross incomes.  § 14-10-114(3)(a)(I)(A), (8)(c), C.R.S. 2025 (maintenance); § 14-10-115(5)(a)(I), C.R.S. 2025 (child support).  "Gross income" means income from any source and includes potential income for a party who the court finds is voluntarily unemployed or underemployed.  § 14-10-114(8)(c)(I), (IV); § 14-10-115(3)(c), (5)(a)(I), (5)(b)(I).  If a parent is voluntarily unemployed or underemployed, the court must calculate child support and maintenance based on the parent's potential, not actual, income.  § 14-10-114(8)(c)(IV); § 14-10-115(5)(b)(I).  "Potential income" is "the amount a party could earn

12

from a full-time job commensurate with the party's demonstrated earning ability." *In re Marriage of Tooker*, 2019 COA 83, ¶ 26. "A trial court may consider evidence of a party's historical income in determining the amount of income" to impute. *Yates*, 148 P.3d at 311.

¶ 23     The court addresses maintenance and child support after dividing the marital assets and debt. *See In re Marriage of Morton*, 2016 COA 1, ¶ 31; § 14-10-113(1). Section 14-10-114(3) details the process a trial court must follow when considering a maintenance request. *In re Marriage of Wright*, 2020 COA 11, ¶ 13. The court must first make findings concerning (1) the amount of each party's gross income; (2) the marital property distributed to each party; (3) each party's financial resources; (4) the reasonable financial need established during the marriage; and (5) whether the maintenance award would be deductible for federal income tax purposes. § 14-10-114(3)(a)(I); *see Wright*, ¶ 14.

¶ 24     After making these initial findings, the court must determine "the amount and term of the maintenance award, if any, that is fair and equitable to both parties." § 14-10-114(3)(a)(II); *see Wright*, ¶ 15. The court need not make explicit factual findings about each

factor in section 14-10-114(3)(c), which governs the amount and duration of maintenance, as long as the record shows that it meaningfully considered the factors and provides us with a clear understanding of the basis for its decision. *Wright*, ¶ 20. Then, after calculating the maintenance award, the court may determine child support obligations. *In re Marriage of de Koning*, 2016 CO 2, ¶ 22. To determine the amount of a child support award, the court must consider several factors, including both parents' financial resources. § 14-10-115(2)(b).

¶ 25 Here, the district court determined that Wife was voluntarily unemployed due to the dissolution of Mindful Mamas and imputed to her a potential income of $75,000 based on her prior work as a school psychologist. The court was well within its discretion to do so, as Wife testified that she planned to return to this job and the amount is commensurate with her demonstrated earning capability as a psychologist. *See Tooker*, ¶ 26; *Yates*, 148 P.3d at 311.

¶ 26 Congruent with our conclusion that the district court did not err regarding Wife's income nor in its distribution of marital assets, we further uphold the court's denial of Husband's maintenance and child support requests. The record before us makes clear that the

parties' financial resources are roughly equal and that the court made explicit findings as to each relevant statutory factor when determining the maintenance and support awards. Thus, the district court did not act unreasonably, arbitrarily, or unfairly by denying Husband's requests. *See In re Marriage of Camarata*, 602 P.2d 907, 908 (Colo. App. 1979); *cf. Wright*, ¶¶ 20-23 (concluding that the trial court abused its discretion by failing to meaningfully consider the section 14-10-114 factors and instead only alluding to the criteria).

## VI. Division of Mindful Mamas' Stock

### A. Additional Background

¶ 27 Initially, both parties used an online service called Carta to value Mindful Mamas. Husband then retained expert Marty Wisott to review Carta's valuation, and Wife retained expert Jeremy Harkness to conduct a rebuttal valuation of Wisott's review. Wisott valued Mindful Mamas at $620,000 in June 2024 and projected a fair market value of $1,290,000 by December 2024. However, Wisott noted at the hearing that Mindful Mamas lost nearly 11% of its subscriber base in the first six months of 2024 and expressed concern about the financial stability of the company.

¶ 28    Harkness valued Mindful Mamas at $95,000.  He testified that Mindful Mamas was a high-risk business and noted Wisott's failure to distinguish *where* the company's revenue was coming from — namely, a transient business-to-business consulting contract with client Otsuka.  Harkness submitted that the revenue from this contract should be subtracted from the income because the arrangement served to keep Mindful Mamas afloat for a limited time and was separate from the company's dwindling subscription-based income.  Harkness further testified that Mindful Mamas had incurred $1.4 million in debt, offsetting its assets.  Wisott and Wife similarly acknowledged this debt, and Wife explained that she would have to pay back creditors as part of the Mindful Mamas' dissolution proceedings.

¶ 29    Finding both experts credible, the district court valued Mindful Mamas at $0.  The court recognized, however, that Wife owned 5,816,680 shares of common stock in Mindful Mamas that retained value to the extent the business itself retained value.  Accordingly, "in the interest of avoiding a potential windfall to Wife if Mindful Mamas retain[ed] some value," the court awarded 50% of Wife's shares to Husband.  Husband argues on appeal that the district

court erred by ordering this lump sum payout and should have instead appointed a special master to oversee dissolution proceedings. We disagree.

### B. Standard of Review

¶ 30 We review the trial court's decision for an abuse of discretion, applying the same principles outlined *supra* Part III.B.

### C. Applicable Law and Analysis

¶ 31 Generally, "property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree." § 14-10-113(5). When an asset is not yet fully realized, the trial court may rely on the net present value or reserve jurisdiction to distribute the property at a later time. *See Zappanti*, 80 P.3d at 894; *In re Marriage of Jorgenson*, 143 P.3d 1169, 1173 (Colo. App. 2006). The former method allows the court to accord a present value to the future benefit and allocate it between the parties immediately, while the latter enables the court to wait until the benefit has accrued to determine the proper division or allocation. *Jorgenson*, 143 P.3d at 1172-73.

¶ 32    The crux of Husband's argument is that the district court heard such competing evidence on Mindful Mamas' value, and the dissolution proceedings remained so complex, that the court should have appointed a special master and reserved jurisdiction for a later distribution. Our review of the permanent orders, however, reveals that the court appreciated the complexity of this asset, carefully weighed the experts' testimony, and determined that Mindful Mamas had "essentially no value." Based on this net present value, but to avoid any potential windfall, the court rightfully allocated equal shares of Wife's common stock to Husband and Wife. Even if we were to come to a different conclusion ourselves on the appropriate method of distribution, we cannot say the district court abused its discretion because its decision is reasonable, ascertainable from the record, and comports with the net present value method. *See id.* at 1172-74.

VII.    Husband's Request for Attorney Fees

A.    Additional Background

¶ 33    Husband requested attorney fees under section 14-10-119, C.R.S. 2025, for a "substantial disparity in income" and section 13-17-102(4), C.R.S. 2025, for Wife's alleged conduct after "forcing a

18

Permanent Orders continuance." The court denied both requests, finding that "the financial resources of the parties are essentially equal," and "[n]either party engaged in conduct which lacked substantial justification."

¶ 34 Husband argues on appeal that the district court's imputation of Wife's potential income renders the attorney fees determination invalid for purposes of income disparity. Providing little to no record support, he further maintains that Wife's conduct associated with the permanent orders hearing continuance entitles him to fees. Wife counters that the continuance resulted from the fact that *neither* party had sufficient time to present their testimony or expert testimony in the time originally allotted. We perceive no error.

## B. Standard of Review

¶ 35 We review the court's decision to award attorney fees for an abuse of discretion. *Davis*, 252 P.3d at 538.

## C. Applicable Law and Analysis

¶ 36 In domestic relations cases, trial courts have the discretion to order a party to pay the other party's reasonable attorney fees "after considering the financial resources of both parties." § 14-10-119. "Courts must consider a request for fees 'in light of [section 14-10-

119's] equitable purpose,'" which includes ensuring that "neither party suffers 'undue economic hardship' as a result of the dissolution." *de Koning*, ¶ 23 (citation omitted). Under the statute, courts may "equitably apportion costs and fees between parties based on relative ability to pay, and courts have great latitude . . . to craft attorney fee orders appropriate to the circumstances in a given case." *Davis*, 252 P.3d at 538.

¶ 37 Alternatively, under section 13-17-102(4), the court shall assess attorney fees if "an attorney . . . or party brought or defended an action . . . that lacked substantial justification" or if the action "was interposed for delay . . . or if the court finds that an attorney . . . or party unnecessarily expanded the proceeding by other improper conduct." The two statutes are not mutually exclusive, and the trial court may award attorney fees under section 14-10-119, section 13-17-102(4), or both. *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo. 1997).

¶ 38 The district court acted within its discretion by denying Husband's request under section 14-10-119 because the parties have similar financial resources. *See Davis*, 252 P.3d at 538. And because Husband fails to point us to locations in the record

supporting his position that Wife engaged in "dilatory tactics," we will not disturb the district court's finding under section 13-17-102(4). *See* C.A.R. 28(a)(7); *see also Am. Fam. Mut. Ins. Co. v. Am. Nat'l Prop. & Cas. Co.*, 2015 COA 135, ¶ 42 (declining to consider conclusory allegations that lacked development); *In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.

## VIII.  Disposition

¶ 39    We affirm the judgment but remand the case so the magistrate may correct the permanent orders to reflect the proper valuation of the Lincoln Residence.

JUDGE KUHN and JUDGE SULLIVAN concur.